540 S.E.2d 454

**Frederick HOPKINS, Jr., Appellant,**

v.

**Carol G. HOPKINS, Respondent.**

**No. 25220.**

Supreme Court of South Carolina.

Heard Oct. 3, 2000.
Decided Dec. 18, 2000.

302

Frederick T. Hopkins, pro se, of Florence, for appellant.

Frank A. Barton, of West Columbia, for respondent.

WALLER, Justice:

In this domestic case, Frederick Hopkins (Father), acting *pro se*, seeks reimbursement of overpayments of child support, attorneys' fees,[1] and pre- and post-judgment interest from his ex-wife, Carol Hopkins (Mother).

## FACTS

Mother and Father were married in 1967; they divorced in May 1983. They had two children: Sean, born May 26, 1972, and Fred, born December 4, 1969. Father was ordered to pay child support of $350.00 per month. In November 1986, Father was found to be $18,693.00 in arrears in his child support, and an order garnishing $432.60 per month of his military disability payments was entered.[2]

The younger son, Sean, went to live with Father for approximately 5 months, from late April, 1990, through September, 1990.[3] In early May 1990, Father instituted the instant action seeking custody of Sean; a hearing was held on May 13, 1990, three days prior to Sean's 18th birthday. Father sought termination of support for his older son Fred, claiming he was

1. Although Father is currently *pro se,* he was represented at trial by his current wife, attorney Cheryl Turner Hopkins.

2. Father was injured in the Vietnam war; his sole source of income is his disability check of $1127.00 per month. Seventy dollars of the garnished amount went toward arrears, and 3% went toward administrative costs. The garnishment order provided for a duration until the "child reaches 18, emancipated or married or under court order."

3. Sean then left Father's custody without notice and returned to Columbia to live with Mother.

over age 18 and was not entitled to post-emancipation support;[4] Father did, however, request Mother be required to pay post-emancipation support for Sean. The family court gave Father temporary custody of Sean but required Father to continue making his child support payments pending the final hearing.[5]

Due to circumstances beyond the control of the parties, a final hearing was not held until May 13, 1993.[6] The family court found 1) that Father's child support obligations ended Dec. 4, 1987 (Fred) and May 26, 1990 (Sean), and that Father had a "credit" on his child support of $6485.75. Although the family court found it was "inequitable" for Mother to retain the excess post-emancipation support, he declined to require Mother to repay it, believing Father was "in a better position to forego repayment." The family court held both parties should be responsible for their own attorneys' fees.

## ISSUES

1). Did the family court err in refusing to require Mother to reimburse Father for excess payments of child support?

2) Did the family court err in ruling Father was not entitled to attorneys' fees?

3) Is Father entitled to pre- and post-judgment interest?

## STANDARD OF REVIEW

On appeal from an order of the family court, this court has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence. *Epperly v. Epperly,* 312 S.C. 411, 440 S.E.2d 884 (1994).

---

4. *See Risinger v. Risinger,* 273 S.C. 36, 253 S.E.2d 652 (1979).

5. The family court noted Father still owed an arrearage, and that an adjustment could be made at the time of the final hearing if Father was entitled to any set-offs.

6. The family court entered an order on May 13, 1993 immediately terminating the garnishment of Father's disability check.

## 1. REIMBURSEMENT OF EXCESS SUPPORT[7]

 Father contends he is entitled to reimbursement of overpayments of child support. We agree.

 The family courts of this state have authority to order reimbursement of child support expenses. *See LaFitte v. LaFitte,* 280 S.C. 473, 313 S.E.2d 41 (Ct.App.1984) (remanding issues of reimbursement of past college expenses and payment of further college expenses). The question of child support is largely within the discretion of the trial judge whose decision will not be disturbed on appeal unless an abuse of discretion is shown. *Hallums v. Hallums,* 296 S.C. 195, 371 S.E.2d 525 (1988).

Here, according to the family court's temporary order from the hearing of May 23, 1990 (three days prior to Sean's emancipation), Father sought to terminate his child support payments, but Mother urged the Court to continue the *status quo* "with the understanding that if [Father's] position is correct pertaining to child support, then issues of arrearage and support can be established and adjusted at the merits hearing. In other words, if [Father] is entitled to a set-off, this can be calculated at the merits hearing and [Father] given proper credit."

At the final hearing, the family court ruled Father had indeed overpaid child support.[8] Notwithstanding the court

---

7. In addition to claiming entitlement to reimbursement for excess support payments, Father claims he is entitled to child support from Mother for the five-month period during which he had custody of the younger son, Sean. We disagree. The family court found neither child was entitled to post-emancipation support. Sean turned 18 years of age within three days of the 1990 hearing on this matter and was therefore emancipated during the majority of Father's custody. Accordingly, we decline to modify the family court's ruling in this regard.

8. The family court found Father's overpayments totaled $6485.75. It found Father's child support obligations ended when each child reached age 18; therefore, as to Fred, Jr., the obligation ended 12/4/97; as to Sean, it ended 5/26/90. Our own view of the evidence indicates Father is entitled to only $4616.47 reimbursement. Father had an outstanding arrearage of $18,693.53 on Nov. 17, 1986; he paid a total of $5460 toward that arrearage from 1986 until the time of trial in 1993. He also paid a total of $17,850 post-majority support ($11550.00 for Fred, and $6300.00 for Sean). Accordingly, Father paid a total of

specifically found it was inequitable for Mother to retain the excess support, it found Mother's financial condition "too precarious" and that Father is in a better position to forego repayment. This assertion is simply not borne out by the record. While it is true that Mother subsequently filed for bankruptcy, the evidence at trial demonstrated Father had a net income of $794.40 per month and Mother had a net income of $5614.00 per month (including $412.00 child support). There is simply no evidence in the record Father was in fact in a better position to forego repayment. Accordingly, we find the court abused its discretion in refusing to require Mother to reimburse the excess payments. *Bull v. Smith*, 299 S.C. 123, 125, 382 S.E.2d 905, 906 (1989) (child support awards are reviewed for abuse of discretion); *Watson v. Watson*, 291 S.C. 13, 351 S.E.2d 883 (Ct.App.1986) (requiring wife to repay husband amounts she received as *pendente lite* support where final hearing demonstrated she was not entitled to support). Accordingly, the family court's order is reversed on this issue.

## 2. ATTORNEY'S FEES

Father, who was represented at trial by his attorney/wife, contends the family court erred in denying his request for attorneys' fees. We disagree.

In *Calhoun v. Calhoun*, 339 S.C. 96, 529 S.E.2d 14 (2000), we recently addressed the issue of whether a *pro se* attorney/litigant is entitled to attorneys' fees. In *Calhoun,* the Wife in a domestic proceeding, who happened to be an attorney, appeared *pro se* at trial. She sought to recover attorneys' fees for the 120.4 hours she spent defending the action. This Court acknowledged that a majority of states allow *pro se* litigants to recover attorneys' fees. However, we nonetheless chose to follow the minority rule and deny attorney's fees to such litigants. We found a *pro se* litigant, whether an attorney or layperson, does not become "liable for or subject to fees charged by an attorney." Accordingly, we held Calhoun was not entitled to recover attorneys' fees for time spent defending herself.[9]

---

$23,310 toward his arrearage of $18,693.53, resulting in an overage of $4616.47. Mother· is therefore ordered to reimburse this amount.

**9.** Attorneys' fees have also been denied to *pro se* attorney/litigants for the policy reason that it would simply be unfair to allow *pro se*

██ Similarly, here, we find no evidence Father actually became "liable for or subject to" attorneys' fees for his attorney/wife's service. There is no contract or fee agreement in the record, nor is there any indication or testimony that Father's wife/attorney has attempted or intends to collect the fees from Father. Accordingly, Father did not prove that he became liable for the fees, such that the family court properly denied Father's request. *Cf. Lisa v. Strom,* 183 Ariz. 415, 904 P.2d 1239, 1242 (App.1995) (finding award of attorneys' fees has an "indispensable requirement ... [there] be a genuine financial obligation on the part of the litigants to pay such fees," and that wife represented by her attorney/husband had no such genuine obligation).

### 3. INTEREST

██ Finally, Father asserts he is entitled to pre- and post-judgment interest. We disagree.

South Carolina Code Ann. § 34–31–20(B) (1987) states that money decrees and judgments of courts enrolled or entered shall draw interest at a rate of 14% per annum. Prior to this opinion, Father received no money judgment; accordingly, he is not entitled to post-judgment interest. Further, in *Calhoun, supra,* we recently held pre-judgment interest must be pled in order to be recovered. As no request for pre-judgment interest was made below, Father is not entitled to such an award.

### CONCLUSION

Father is entitled to reimbursement of $4616.47 from Mother. The remainder of the family court's order is affirmed.

**AFFIRMED IN PART; REVERSED IN PART.**

TOAL, C.J., MOORE, BURNETT and PLEICONES, JJ., concur.

---

attorneys to recover fees, while denying such fees to *pro se* **laymen.** *See Lisa v. Strom,* 183 Ariz. 415, 904 P.2d 1239, 1243 (App.1995).