580 S.E.2d 765

**Thomas Durrette WOOTEN, Jr., Plaintiff,**

v.

**Mona Rae Howell WOOTEN, Defendant
and Third–Party Plaintiff,**

v.

**Pam Perry, Third–Party Defendant,**

**of whom Thomas Durrette Wooten, Jr., is the Appellant,**

**and**

**Mona Rae Howell Wooten is the Respondent.**

**No. 3610.**

Court of Appeals of South Carolina.

Heard Jan. 13, 2003.

Decided March 10, 2003.

Rehearing Denied June 5, 2003.

244

C. Dixon Lee, II, and James T. McLaren, of Columbia; Lon H. Shull, of Mt. Pleasant, for Appellant.

Robert N. Rosen, of Charleston, for Respondent.

HEARN, C.J.:

Thomas Durrette Wooten, Jr., (Husband) appeals several aspects of a divorce decree, including the award of the marital home to Wife, the identification of certain credit card charges incurred after the parties' separation as marital debt, the decision to grant Wife permanent alimony of $4,300 per month, and the award to Wife of $52,917.21 in attorney's fees and costs. We affirm as modified in part and reverse and remand in part.

Husband and Mona Rae Wooten (Wife) were married in 1976. They have three children, all of whom are past the age of majority.

The parties married while Husband was completing medical school and Wife was employed as a nursing instructor at The Medical University of South Carolina. Husband finished his residency in 1980 and the couple moved to Columbia for him to pursue open-heart surgery anesthetics. A year later they moved back to the Charleston area and purchased a riverfront home on Johns Island. The couple transformed the house, which was described as "barely livable," into a five-bedroom home containing nearly 5,000 square feet and valued at $675,000.00 at the time of the divorce hearing.

During the marriage, the parties enjoyed a comfortable, if not extravagant lifestyle, which was largely centered on outdoor activities such as boating, hunting, and fishing. Husband and the parties' older daughter and son were actively involved in hunting and fishing. Wife described fishing as Husband's "main love."

Wife stayed home with the children while they were small and worked in Husband's practice as a bookkeeper. In 1995, Wife went to work in the Charleston County Coroner's office. At the time of trial, Wife was employed as the deputy coroner

for Charleston County earning a salary of approximately $47,000 per year. Husband was earning approximately $217,000 per year.

At some point during the marriage, Husband admitted to Wife that he had been unfaithful to her with the wife of another anesthesiologist while away at a medical meeting. Wife testified that Husband also admitted to her that he had been sexually intimate with the wife of a fishing buddy. Husband, however, testified that he had only engaged in a one-night stand with the wife of someone he fished with while at a fishing tournament in Kiawah.

In 1986 or 1987, approximately twelve years before the parties separated, Wife began a year-long affair with a family friend. The affair continued even after Husband confronted Wife, and subsequently the parties entered counseling. The parties saw four or five different counselors during this troubled time in their marriage.

In February of 1999, Husband left the marital home and subsequently underwent a vasectomy. Although Wife sought a reconciliation, Husband informed the parties' marriage counselor that he no longer loved Wife and only wanted to discuss a division of their marital assets.

Husband commenced this action in June of 1999 for an order of separate maintenance and support and an equitable division of the parties' assets and debts. Wife answered and counterclaimed seeking a divorce on the ground of adultery, possession and ownership of the marital home, equitable division of marital property, alimony, and attorney's fees.

At trial, the parties announced they had reached an agreement regarding the division of their personal property. Husband also conceded that Wife was entitled to alimony and to an equal division of the marital estate. The remaining issues were tried over a five-day period after which the family court judge issued a final order granting Wife a divorce on the ground of adultery.

Although Husband conceded at trial that Wife was entitled to a fifty-fifty division of the marital estate, he requested that the only asset of the parties that can be readily liquidated, the marital home, be sold to accomplish this division. The court

valued the marital estate at $1,571,103.[1] To accomplish the fifty-fifty division of the marital estate, the family court judge awarded the marital home to Wife, together with its mortgage debt, her retirement account, and $137,395.50 from Husband's retirement account. Husband was awarded his interest in his medical practice valued at $41,000, the remainder of his retirement account, and indebtedness totaling $83,552. The family court also awarded Wife $4,300 per month in permanent, periodic alimony, and $52,917.21 in attorney's fees and costs.

## STANDARD OF REVIEW

■ On appeal from the family court, this court has jurisdiction to find the facts in accordance with our own view of the preponderance of the evidence. *Murdock v. Murdock*, 338 S.C. 322, 526 S.E.2d 241 (Ct.App.1999). However, we are mindful of the fact that the family court judge, who had an opportunity to observe the witnesses, was in a better position to evaluate their testimony. *Smith v. Smith*, 327 S.C. 448, 486 S.E.2d 516 (Ct.App.1997).

## DISCUSSION

### I. Credit Card Debt

■ Husband asserts the family court judge erred in identifying $12,332 in credit card charges incurred by Wife after the parties' separation as marital debt and in allocating that debt to him. We agree.

Wife testified that although Husband initially paid all household bills when he left the marital home, sometime in June of 1999 he told her that she should start paying some of the bills. After that time, and up until the time of the temporary hearing, Husband paid the mortgage payments on the marital home while Wife used her credit card for other expenses such as food and veterinary bills. Wife testified that she had a credit card bill of $12,322. The family court judge treated this debt as a marital debt subject to equitable apportionment. We find that this was error.

---

1. The marital estate consisted of the marital home valued at $675,000, with equity of $539,349; Husband's retirement accounts valued at $844,026; Wife's retirement account valued at $11,077; and, Husband's interest in his medical practice valued at $41,000.

■ "Marital property" for purposes of the South Carolina Apportionment of Marital Property Act is defined in S.C.Code Ann. § 20–7–473 (Supp.2002) as "all real and personal property which has been acquired by the parties during the marriage and which is owned *as of the date of filing or commencement of marital litigation* ...." (emphasis supplied). Moreover, in making an equitable apportionment, the family court should consider "... any other existing debts incurred by the parties or either of them during the course of the marriage[.]" S.C.Code Ann. § 20–7–472(13) (Supp.2002). "[S]ection 20–7–472 creates a [rebuttable] presumption that a debt of either spouse *incurred prior to marital litigation* is a marital debt and must be factored in the totality of equitable apportionment." *Hardy v. Hardy*, 311 S.C. 433, 436, 429 S.E.2d 811, 813 (Ct.App.1993) (emphasis supplied).

Because it is undisputed Wife incurred these credit card charges subsequent to the filing of marital litigation, it was error for the family court judge to have considered them as a marital debt subject to equitable apportionment.[2] Accordingly, we reverse this portion of the family court's order allocating the credit card debt to Husband.

## II. Marital Home

■ Husband next contends the family court judge erred in awarding Wife ownership of the marital home as part of her share of the marital estate, arguing it was inequitable to award Wife the only asset of the parties that readily lends itself to liquidation. We agree.

Husband's position throughout trial was that although Wife was entitled to share equally in the marital estate, the marital home should be sold to enable the parties to capture its substantial equity. At the time of trial, the marital home, which was titled in Wife's name, had equity of at least $539,349. Husband proposed that the home be jointly titled in both parties' names and sold so that the parties could combine their $250,000 exclusions for capital gains taxes. Gerald Feinberg, a CPA, testified for Husband concerning the tax conse-

---

2. We express no opinion as to whether or not the family court could have required Husband to reimburse Wife for some or all of these charges as an incident of support.

quences to the parties of the various methods of equitable distribution. Feinberg testified that if the parties sold the marital home together, they could take advantage of the joint capital gains exclusion of $500,000. He further testified that if Wife was awarded the home and Husband had to liquidate his retirement account in order to satisfy the remaining equitable division award and to make a down payment on a residence for himself, he would suffer substantial tax and withdrawal penalties. Feinberg testified these penalties would result in Husband losing fifty-one percent of the value of any retirement funds he withdrew. Wife, on the other hand, testified that she wanted to be awarded the marital home in partial satisfaction of her equitable share because "[I]t's my home. It's where my life is centered. . . . It's where I have my kids and enjoyment. It's where I have my friends and enjoyment."

In awarding the marital home to Wife as part of her equitable share, the family court judge specifically stated that she had not given Husband's fault any weight. She likewise held that in awarding the home to Wife, she did not consider the children's use of the home, as they were all emancipated and Husband had no obligation to support them other than their college education. These findings were not appealed from and are therefore the law of this case. *See Buckner v. Preferred Mut. Ins. Co.,* 255 S.C. 159, 177 S.E.2d 544 (1970) (stating that an issue which is not challenged on appeal, whether right or wrong, becomes the law of the case).

Additionally, the family court judge specifically noted that she had not considered the tax ramifications of the sale of the house and the taxability of the pension payments. Relying on *Ellerbe v. Ellerbe,* 323 S.C. 283, 473 S.E.2d 881 (Ct.App.1996), the family court judge found that she was precluded from dividing the parties' property based on after-tax dollars stating that, "To make a decision based on after-tax dollars is for this Court to engage in speculation as to what the parties will do in the future."

The apportionment of marital property is within the family court judge's sound discretion and will not be disturbed on appeal absent an abuse of that discretion. *Bowers v. Bowers,* 349 S.C. 85, 97, 561 S.E.2d 610, 616 (Ct.App.2002). Section 20-7-472 lists fifteen factors for the family court to

consider when making an equitable apportionment of the marital estate and vests the family court with the discretion to determine what weight should be assigned to each factor. On review, this court looks to the overall fairness of the apportionment, and if the result is equitable, taken as a whole, that this court might have weighed specific factors differently than the family court is irrelevant. *Id.*

We find the family court judge abused her discretion in awarding the marital home to Wife as part of the equitable division. Case law indicates that the family court judge should first attempt an in-kind distribution. *Stevenson v. Stevenson*, 295 S.C. 412, 415, 368 S.E.2d 901, 903 (1988). However, an in-kind distribution is most equitable where the assets being divided are similar in character. In our view, the family court judge's decision to award Wife the major marketable asset of the parties, while awarding Husband primarily his retirement account, was not an equitable in-kind distribution. Under Husband's proposal, *all* assets of the parties would have been equally divided on a fifty-fifty basis. Under Wife's proposal, the captured equity in the marital home was viewed as being equivalent to Husband's retirement plan, despite the fact that the equity in the marital home was readily available with little or no tax consequence to Wife and the funds in Husband's retirement plan were subject to a total penalty of fifty-one percent if withdrawn.

Wife presented no testimony to dispute the testimony of Husband and his expert concerning the tax ramifications of the proposals for equitable division. Therefore, in this case it is uncontradicted that the Husband's proposal for equitable division would have allowed the parties to take advantage of the joint $500,000 capital gains exclusion while the Wife's proposal would result in the Husband incurring a severe penalty of over fifty per cent in the liquidation of a portion of his retirement fund. Moreover, we believe the family court incorrectly concluded that appellate case law precluded her from considering the tax consequences of the equitable distribution.

In *Ellerbe*, the husband asserted the family court judge erred in discounting the value of the parties' retirement plans when the order did not require the plans to be liqui-

dated. This court agreed, finding that *"[b]ecause we see no need for the accounts to be liquidated,* we hold the family court erred in valuing the parties' retirement accounts at 48% of their face values." 323 S.C. at 289, 473 S.E.2d at 885 (emphasis supplied). Here, as in *Ellerbe,* the family court's order does not contemplate the liquidation of the Husband's retirement account. However, we believe it was an error for the family court to have disregarded Husband's substantial evidence establishing the necessity to withdraw funds from his retirement account to comply with the family court's division of the marital property. Because the family court should have recognized Husband's need to liquidate the account, the tax consequences of that liquidation should have been considered. *See* S.C.Code § 20–7–472(11) (Supp.2002) (specifically requiring the family court to consider "the tax consequences to each or either party as a result of any particular form of equitable apportionment[.]"). The family court judge apparently interpreted *Ellerbe* to hold that potential tax ramifications should *never* be considered by the family court in deciding how to fashion an equitable division if the chosen method of division in the order does not expressly require liquidation of an asset. This restrictive interpretation is flawed where, as here, in comparing competing alternatives for division of the property, the tax consequences should have been considered in order to accomplish an *equitable* division in the first place.

We likewise find the case of *Bowers* distinguishable. In *Bowers,* this court declined to find error when the family court judge failed to consider the tax consequences resulting from its award to the wife of one-half the value of the husband's 401(k) account. Citing *Ellerbe,* this court found no abuse of discretion, but stated there was no evidence that either party anticipated liquidation of the account. This is in marked contrast to the evidence presented here from Husband and his expert witness that he would be required to liquidate his retirement account in order to comply with the order and to acquire a home for himself.

South Carolina appellate courts have carefully protected the rights of spouses to realize the benefits of equity in a marital home. For instance, before awarding a spouse the exclusive possession of the home as an incident of support, family courts are required to "carefully consider the claim of a

party that the interests of that party or the children are *so predominant*, when balanced against the interests of the other, that an award of exclusive possession of the marital home is *compelled." Johnson v. Johnson,* 285 S.C. 308, 311, 329 S.E.2d 443, 445 (Ct.App.1985) (emphasis added). The rationale for scrutinizing such requests lies in the substantial burden upon the party who must defer realization of the value of his or her share of the marital home. *Morris v. Morris,* 335 S.C. 525, 534, 517 S.E.2d 720, 725 (Ct.App.1999). In *Morris,* the only assets of significant value were the marital home and the retirement account. This court found the family court judge properly denied the wife's request for exclusive possession of the marital home as an incident of support. Significantly, we stated, "By delaying [the husband's] realization of his equity in the home, *he is left with no liquid assets with which to establish his new life,* apart from the income he earns." *Id.* (emphasis added).

We see no reason to apply less protection in cases considering the exclusive award of the marital home to one spouse, against the other's desire, as that spouse's share of the marital estate. Wife presented no evidence to compel the family court to award her the exclusive possession of the home. The realization of Husband's share of the equity in the present case is not merely delayed; it is terminated. We believe this result casts an even more inequitable burden upon Husband than cases awarding exclusive possession as an incident of support. The family court's apportionment of the marital estate requires Husband to begin anew without the benefit of his share of the equity accumulated in the only marketable asset of the marital estate; a result we disapproved of in *Morris.*

Taking our own view of the evidence presented in this case, we do not believe that the apportionment of marital assets was fair to both parties. Wife's emotional attachment to the marital home should not outweigh the undisputed expert testimony that in order to effect a division which is equitable to both parties, the marital home should be sold and the parties should realize the benefits of the $500,000 capital gains exclusion. We find it was error for the family court judge to have viewed these two assets the equity in the marital home and Husband's retirement plan as though they were equiva-

lent assets. The family court abused its discretion in awarding the marital home to Wife in the face of undisputed testimony that both parties would realize a significant tax benefit by selling the home and dividing its proceeds. Accordingly, we reverse this portion of the family court's order and remand this issue back to the family court to enter an order consistent with this opinion.

## III. Alimony

Husband next argues the family court judge's award of $4,300 per month in permanent periodic alimony was excessive. Although the alimony award does not appear excessive in view of the disparity in the parties' incomes and the length of the marriage, the family court judge based this alimony award upon her assumption that Wife would be residing in the marital home. Accordingly, she considered Wife's many needs and expenses that would be associated with her ownership and maintenance of that home, such as an additional $300 to be used by Wife in acquiring a boat. Because we have reversed that portion of the family court order which awarded Wife the marital home as part of her equitable apportionment, we feel compelled to remand the issue of alimony to the family court for recalculation in light of Wife's present needs. *See Ellerbe*, 323 S.C. at 297, 473 S.E.2d at 889 (remanding the issue of alimony for reconsideration in light of remanding the issue of the equitable division award, which is a factor relevant to the award of alimony).

## IV. Attorney's Fees and Costs

Finally, Husband asserts the family court judge erred in awarding Wife $52,917.21 in attorney's fees and costs.[3] He argues the court erred in awarding any fees to Wife because of the numerous errors he asserts she made in the trial order. He further contends the amount of the award was excessive given his financial condition. We disagree.

An award of attorney's fees will not be overturned absent an abuse of discretion. *Stevenson*, 295 S.C. at 415, 368 S.E.2d at 903. In deciding *whether* to award attorney's fees,

---

3. Husband had already contributed $25,547.50 toward Wife's fees at the time of trial for a total award of $75,129.21.

the family court should consider the parties' ability to pay their own fee, the beneficial results obtained by counsel, the respective financial conditions of the parties, and the effect of the fee on each party's standard of living. *E.D.M. v. T.A.M.,* 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992). When determining the *amount* of fees to award, the court is to consider the nature, extent, and difficulty of the services rendered, the time necessarily devoted to the case, counsel's professional standing, the contingency of compensation, the beneficial results obtained, and the customary legal fees for similar services. *Glasscock v. Glasscock,* 304 S.C. 158, 403 S.E.2d 313 (1991).

Even though Husband prevailed on two of the equitable division issues in this appeal, the beneficial results obtained are only one of several factors to be considered by the family court in deciding whether or not to award attorney's fees. The other factors outlined above clearly militate in favor of an award to Wife. Moreover, Wife's attorney received a favorable result on the issue of divorce and on the issue of alimony, which this court remanded only because of our decision on the equitable division of the marital home. Finally, Husband commenced this action for separate support and maintenance and Wife was required to obtain competent counsel to defend it.

Nor are we persuaded that the amount of fees and costs awarded by the family court was excessive under the circumstances. Husband testified at trial that his own attorney's and accountant's fees were $70,000, although the family court judge found in her order that he had incurred fees and costs of $58,998.24.

Wife's counsel is an accomplished family practitioner with an excellent reputation in the community. Particularly given the wide disparity in the parties' incomes, we do not believe it was error for the family court judge to have awarded Wife the entire amount of her attorney's fees and costs incurred in defending this action.

## CONCLUSION

Accordingly, we affirm the family court judge's award of attorney's fees and costs, reverse her decision to treat Wife's

credit card charges incurred after the date of filing as a debt subject to equitable division, reverse her decision to award Wife the marital home as part of her equitable division and direct that the home be sold, and remand the equitable division and alimony issues to the family court for further consideration consistent with this opinion.

CURETON J., concurs.

ANDERSON J., dissents in a separate decision.

ANDERSON, J. (dissenting):

I respectfully dissent. In this domestic case, Thomas Durrette Wooten, Jr. (Husband) appeals from an order of the Family Court. The issues include identification of marital debt, equitable division of marital property, alimony, and attorney's fees and costs. I disagree with the analysis and reasoning of the majority. I vote to affirm in part, reverse in part, and modify in part.

## FACTS/PROCEDURAL BACKGROUND

Husband and Mona Rae Wooten (Wife) were married in 1976. They have three children, all of whom are past the age of majority.

At the time of the marriage, Husband was on the verge of completing medical school at the Medical University of South Carolina and Wife was employed at the University as a nursing instructor. When Husband completed his residency, the parties moved to Columbia so Husband could take a job performing open heart surgery anesthetics.

After approximately one year, the parties moved to Mt. Pleasant. Soon thereafter, Husband and Wife purchased a home on Johns Island, where they lived throughout the duration of the marriage. Although the home, located on two acres of riverfront property, was "barely livable" at the time of the purchase, the parties renovated, restored, expanded, and otherwise improved the home. Eventually, the home became an integral part of the parties' lifestyles, particularly that of Wife. The parties did not travel extensively or host extravagant parties, but often entertained friends in the home and participated in boating and other recreational activities on

the river. Husband and Wife purchased about twenty-four boats during the marriage, ranging in size from a jon boat to a thirty-five foot ocean-going fishing vessel.

Around February 10, 1999, Husband left the marital home and refused to tell Wife where he was planning to live. One month later, he informed the parties' marriage counselor he no longer loved his wife and only wanted to discuss division of their assets. On March 19, 1999, Husband underwent a vasectomy. Husband admitted he was romantically involved with Pam Perry, his then married co-worker, in April of 1999, although he denied any prior romantic involvement with her.

For a time immediately following the parties' separation, Husband paid Wife's expenses. After Husband told Wife she would have to start paying her bills from her own money, Wife began relying heavily on use of her credit cards to make purchases such as food and prescription drugs, and to pay college tuition for one of the parties' children.

Husband filed this action in June of 1999 seeking, *inter alia,* an order allowing him to live separate and apart from Wife and equitably apportioning the parties' marital property and debts. Wife answered and counterclaimed, seeking a divorce on the ground of adultery, possession and ownership of the marital home, equitable division of marital property, an award of alimony, and ancillary relief.

The Family Court heard the action over five days in April and May of 2000. The parties reached an agreement as to equal division of their personal property, such that the central issues remaining for adjudication at trial were alimony and the equitable division of marital property. The parties agreed on a fifty-fifty division of the marital estate.

The Family Court valued the parties' marital estate at $1,328,156. The principal assets consisted of the marital home, which had a fair market value of $675,000 and an equitable value of $539,349; Husband's $844,026 retirement accounts; Wife's $11,077 retirement plan; and Husband's $41,000 interest in his medical practice.

The Family Court granted Wife a divorce on the ground of adultery and determined the marital estate should be divided equally between the parties. To accomplish this division, the court awarded Wife full ownership of the marital home, together with its mortgage debt, her retirement account, and

$137,395.50 from the husband's retirement accounts. The court awarded Husband his interest in his medical practice and the remainder of his retirement accounts, and allocated indebtedness to him totaling $83,552.50. The court found Wife was entitled to $4,300 per month in permanent periodic alimony, and $52,917.21 in attorney's fees and costs. Husband's post-trial motion for reconsideration was denied.

## STANDARD OF REVIEW

On appeal from the Family Court, this Court has jurisdiction to find the facts in accordance with its own view of the preponderance of the evidence. *Dearybury v. Dearybury,* 351 S.C. 278, 569 S.E.2d 367 (2002); *Hopkins v. Hopkins,* 343 S.C. 301, 540 S.E.2d 454 (2000); *Murdock v. Murdock,* 338 S.C. 322, 526 S.E.2d 241 (Ct.App.1999). This tribunal, however, is not required to disregard the Family Court's findings. *Heins v. Heins,* 344 S.C. 146, 543 S.E.2d 224 (Ct.App.2001); *Badeaux v. Davis,* 337 S.C. 195, 522 S.E.2d 835 (Ct.App.1999). Likewise, we are not obligated to ignore the fact the Family Court judge, who saw and heard the witnesses, was in a better position to evaluate their testimony. *Bowers v. Bowers,* 349 S.C. 85, 561 S.E.2d 610 (Ct.App.2002); *Smith v. Smith,* 327 S.C. 448, 486 S.E.2d 516 (Ct.App.1997); *see also Dorchester County Dep't of Soc. Servs. v. Miller,* 324 S.C. 445, 477 S.E.2d 476 (Ct.App.1996) (ruling that because appellate court lacks the opportunity for direct observation of witnesses, it should accord great deference to the Family Court's findings where matters of credibility are involved); *Terwilliger v. Terwilliger,* 298 S.C. 144, 378 S.E.2d 609 (Ct.App.1989) (holding the resolution of questions regarding credibility and the weight given to testimony is a function of the Family Court judge who heard the testimony). Because the appellate court lacks the opportunity for direct observation of witnesses, it should accord great deference to trial court findings where matters of credibility are involved. *Shirley v. Shirley,* 342 S.C. 324, 536 S.E.2d 427 (Ct.App.2000).

## LAW/ANALYSIS

### I. Credit Card Debt

Husband argues the Family Court erred in identifying $12,332 in credit card charges as marital debt subject to

equitable division, and in allocating the debt to him, inasmuch as Wife incurred the debt after this action was commenced. I agree the debt should not have been allocated to Husband.

South Carolina Code Ann. § 20–7–472 (Supp.2002) provides in pertinent part:

In making apportionment, the court must give weight in such proportion as it finds appropriate to all of the following factors:

. . . .

(13) liens and any other encumbrances upon the marital property, which themselves must be equitably divided, or upon the separate property of either of the parties, and any other existing debts incurred by the parties or either of them during the course of the marriage. . . .

Debts incurred for marital purposes are subject to equitable distribution. *Jenkins v. Jenkins,* 345 S.C. 88, 545 S.E.2d 531 (Ct.App.2001). Section 20–7–472 creates a rebuttable presumption that a debt of either spouse incurred *prior* to marital litigation is a marital debt, and must be factored into the totality of equitable apportionment. *Hickum v. Hickum,* 320 S.C. 97, 463 S.E.2d 321 (Ct.App.1995).

"Marital debt" has been defined as debt incurred for the joint benefit of the parties regardless of whether the parties are legally jointly liable for the debt or whether one party is legally individually liable. *Thomas v. Thomas,* 346 S.C. 20, 550 S.E.2d 580 (Ct.App.2001), *cert. granted,* Jan. 24, 2002; *Hardy v. Hardy,* 311 S.C. 433, 429 S.E.2d 811 (Ct.App.1993). In equitably dividing a marital estate, the Family Court is to consider the net estate, and must apportion marital debt in conjunction with the apportionment of assets. *Hardy,* 311 S.C. at 437, 429 S.E.2d at 813; *see also Smith v. Smith,* 327 S.C. 448, 486 S.E.2d 516 (Ct.App.1997) (marital debt is a factor to be considered in making the equitable apportionment). Marital debt, like marital property, must be specifically identified and apportioned in equitable distribution. *Smith,* 327 S.C. at 457, 486 S.E.2d at 520 (section 20–7–472 implicitly requires that marital debt, like marital property, be specifically identified and apportioned in the equitable distribution); *Frank v. Frank,* 311 S.C. 454, 429 S.E.2d 823 (Ct.App.1993). The same rules of fairness and equity which apply to the

equitable division of marital property also apply to the division of marital debts. *Hardy,* 311 S.C. at 437, 429 S.E.2d at 813–14.

The burden of proving a spouse's debt as nonmarital rests upon the party who makes such an assertion. *Hickum,* 320 S.C. at 103, 463 S.E.2d at 324. If the trial judge finds that a spouse's debt was not made for marital purposes, it need not be factored into the court's equitable apportionment of the marital estate, and the trial judge may require payment by the spouse who created the debt for nonmarital purposes. *Id.*

Even where a spouse individually incurs debt *after* a marital separation but before a divorce decree is entered, the debt should be apportioned in accordance with the principles of equitable distribution where there is a showing that the debt was incurred for the joint benefit of both parties. *See Peirson v. Calhoun,* 308 S.C. 246, 417 S.E.2d 604 (Ct.App.1992); *see also Allen v. Allen,* 287 S.C. 501, 339 S.E.2d 872 (Ct.App.1986) (finding that while it is proper to consider marital debts in making an equitable distribution of marital assets, it is also incumbent upon the court which apportions such debts to ensure the debts were incurred for the joint benefit of the parties during the marriage).

In the instant case, Wife has made no showing, and I am unable to discern from the record on appeal, that the credit card debts she incurred during the parties' separation were incurred for any purpose inuring to the benefit of Husband. Rather, Wife testified she used her credit card to pay part of a college tuition bill for one of the parties' children and to buy medication, food, and clothing. While these were perhaps legitimate expenses, the resulting credit card debt was not, in my view, incurred for the joint benefit of the parties within the meaning of the governing statute and applicable case law. Moreover, these credit card charges were incurred by Wife *subsequent* to the filing of marital litigation. The court erred in considering the credit card charges as marital debt subject to equitable apportionment. Concomitantly, I agree with the majority's decision to reverse the portion of the Family Court's order allocating the credit card debt to Husband.

## II. Marital Home

Husband asserts the Family Court erred in awarding Wife ownership of the marital home as part of her share in the marital estate. I disagree.

The Family Court is given broad jurisdiction in the equitable distribution of marital property. *Murphy v. Murphy,* 319 S.C. 324, 461 S.E.2d 39 (1995); *see also Greene v. Greene* 351 S.C. 329, 569 S.E.2d 393 (Ct.App.2002) (holding Family Court has wide discretion in determining how marital property is to be distributed). The court may use any reasonable means to divide the property equitably. *Bowyer v. Sohn,* 290 S.C. 249, 349 S.E.2d 403 (1986); *Belton v. Belton,* 325 S.C. 456, 481 S.E.2d 174 (Ct.App.1997); *see also Coxe v. Coxe,* 294 S.C. 291, 363 S.E.2d 906 (Ct.App.1987) (stating Family Court judges are given broad jurisdiction in equitable distribution of marital property and trial judge may use any reasonable means to divide estate equitably). The apportionment of marital property is within the Family Court judge's discretion and will not be disturbed on appeal absent an abuse of discretion. *Bowers v. Bowers,* 349 S.C. 85, 561 S.E.2d 610 (Ct.App.2002); *Peirson v. Calhoun,* 308 S.C. 246, 417 S.E.2d 604 (Ct.App.1992).

In order to effect an equitable apportionment, the Family Court may require the sale of marital property and a division of the proceeds. *Donahue v. Donahue,* 299 S.C. 353, 384 S.E.2d 741 (1989); S.C.Code Ann. § 20–7–476 (Supp.2002) (providing that "[t]he court in making an equitable apportionment may order the public or private sale of all or any portion of the marital property upon terms it determines."). The court, however, should first attempt an "in-kind" distribution of the marital assets. *Donahue,* 299 S.C. at 360, 384 S.E.2d at 745; *Stevenson v. Stevenson,* 295 S.C. 412, 368 S.E.2d 901 (1988). A Family Court may grant a spouse title to the marital home as part of the equitable distribution. *Donahue,* 299 S.C. at 360, 384 S.E.2d at 745. Pursuant to § 20–7–472(10) of the South Carolina Code, the court, in making apportionment, "must give weight in such proportion as it finds appropriate to all of the following factors: ... (10) the desirability of awarding the family home as part of equitable distribution." S.C.Code Ann. § 20–7–472(10) (Supp.2002).

Section 20–7–472 lists fifteen factors for the Family Court to consider when making an equitable apportionment of the marital estate. *Bowers,* 349 S.C. at 97, 561 S.E.2d at 616. The statute vests the Family Court with the discretion to decide what weight should be assigned to the various factors. *Id.* On review, this Court looks to the overall fairness of the apportionment, and if the result is equitable, that this Court might have weighed specific factors differently than the Family Court is irrelevant. *Id.*

In deciding to award Wife the marital home in partial realization of her share in the marital estate, the Family Court expressly weighed: the length of time the parties and their children resided in the home during the marriage; Wife's desire to remain in the home; and the central role the home played in the parties' lifestyles during the marriage. As well, the court considered the fact that Wife's deceased father personally performed much of the woodwork on the home during the process of renovation. Pointedly, the court specifically noted that it "could not award the marital home to the Wife no matter how desirable unless it were a part of the fifty percent (50%) of the marital estate to which she is entitled."

Under these facts and circumstances, there is no error or abuse of discretion in the Family Court's decision to award Wife the marital home instead of ordering its sale. I am particularly convinced of the propriety of the court's decision in this regard in light of Husband's vastly superior income and ability to purchase a home without the necessity of divesting Wife of the marital home.

### III. Tax Ramifications

Husband claims the Family Court erred in failing to consider the tax consequences in the division of the marital estate. I disagree.

In *Ellerbe v. Ellerbe,* 323 S.C. 283, 473 S.E.2d 881 (Ct.App. 1996), the Court of Appeals analyzed tax issues in connection with equitable apportionment and stated:

South Carolina Code Ann. § 20–7–472(11) (Supp.1995) requires the family court to consider the tax consequences to each party resulting from equitable apportionment. However, if the apportionment order does not contemplate

the liquidation or sale of an asset, then it is an abuse of discretion for the court to consider the tax consequences from a supposed sale or liquidation. *See Graham v. Graham*, 301 S.C. 128, 390 S.E.2d 469 (Ct.App.1990); *see also Roe v. Roe*, 311 S.C. 471, 429 S.E.2d 830 (Ct.App.1993). Moreover, a transfer of these funds from one party to the other as a part of an equitable division should not result in a tax consequence. *Josey v. Josey*, 291 S.C. 26, 351 S.E.2d 891 (Ct.App.1986). Here, the parties were awarded their respective accounts. Because we see no need for the accounts to be liquidated, we hold the family court erred in valuing the parties' retirement accounts at 48% of their face values. In redetermining equitable distribution, the family court shall consider the face values of the parties' retirement accounts.

*Id.* at 289, 473 S.E.2d at 884–85.

After *Ellerbe*, this Court, in *Bowers v. Bowers*, 349 S.C. 85, 561 S.E.2d 610 (Ct.App.2002), examined tax effects as applied to the valuation and distribution of the husband's 401(k) account. *Bowers* explicates:

We further find no error in the Family Court's failure to expressly consider tax consequences resulting from its award to Wife of one-half the value of Husband's 401(k) account. Where an order of equitable apportionment does not contemplate the liquidation or sale of an asset, it is an abuse of discretion for the court to consider the tax consequences from a supposed sale or liquidation. *Ellerbe v. Ellerbe*, 323 S.C. 283, 473 S.E.2d 881 (Ct.App.1996). Here, the court's order does not require or contemplate liquidation of Husband's 401(k) account and there is no evidence indicating either party anticipated liquidation of the account.

*Id.* at 97–98, 561 S.E.2d at 617.

I reject the contention by Husband that the apportionment of marital property in the case *sub judice* contemplates the liquidation or sale of an asset. The court's order does not require or contemplate liquidation of Husband's retirement accounts or the sale of the house. Husband asseverates that, in actuality, he will be required to liquidate either the retirement accounts or to sell the house or both in an attempt to comply financially with the court's distribution.

In contrariety to Husband's argument, there is no evidence indicating he will be required to engage in a liquidation of the retirement accounts or to sell the house, other than his self-serving assertions. The Family Court did not err in failing to expressly consider tax consequences resulting from its award to Wife of the house.

## IV. Alimony

Husband contends the Family Court's award to Wife of $4,300 per month in permanent periodic alimony was excessive. I agree.

The decision to grant or deny alimony rests within the discretion of the Family Court judge. *Dearybury v. Dearybury*, 351 S.C. 278, 569 S.E.2d 367 (2002); *Clardy v. Clardy*, 266 S.C. 270, 222 S.E.2d 771 (1976); *Hatfield v. Hatfield*, 327 S.C. 360, 489 S.E.2d 212 (Ct.App.1997). The judge's discretion, when exercised in light of the facts of each particular case, will not be disturbed on appeal absent abuse thereof. *Dearybury*, 351 S.C. at 282, 569 S.E.2d at 369; *Long v. Long*, 247 S.C. 250, 146 S.E.2d 873 (1966). An abuse of discretion occurs when the judge is controlled by some error of law or where the order, based upon findings of fact, is without evidentiary support. *Sharps v. Sharps*, 342 S.C. 71, 535 S.E.2d 913 (2000); *Stewart v. Floyd*, 274 S.C. 437, 265 S.E.2d 254 (1980).

Alimony is a substitute for the support which is normally incident to the marital relationship. *Donahue v. Donahue*, 299 S.C. 353, 384 S.E.2d 741 (1989); *Morris v. Morris*, 335 S.C. 525, 517 S.E.2d 720 (Ct.App.1999); *Johnson v. Johnson*, 296 S.C. 289, 372 S.E.2d 107 (Ct.App.1988). Generally, alimony should place the supported spouse, as nearly as is practical, in the same position of support he or she enjoyed during the marriage. *Allen v. Allen*, 347 S.C. 177, 554 S.E.2d 421 (Ct.App.2001); *McElveen v. McElveen*, 332 S.C. 583, 506 S.E.2d 1 (Ct.App.1998). It is the duty of the Family Court to make an alimony award that is fit, equitable, and just if the claim is well founded. *Hinson v. Hinson*, 341 S.C. 574, 535 S.E.2d 143 (Ct.App.2000); *Woodward v. Woodward*, 294 S.C. 210, 363 S.E.2d 413 (Ct.App.1987). Alimony should not, however, serve as a disincentive for spouses to improve their employment potential or to dissuade them from providing, to

the extent possible, for their own support. *Williamson v. Williamson*, 311 S.C. 47, 426 S.E.2d 758 (1993); *McElveen v. McElveen*, 332 S.C. 583, 506 S.E.2d 1 (Ct.App.1998); *Brandi v. Brandi*, 302 S.C. 353, 396 S.E.2d 124 (Ct.App.1990).

In making an award of alimony, the following factors must be considered and weighed: (1) the duration of the marriage and ages of the parties at the time of the marriage and at the time of the divorce; (2) the physical and emotional condition of each spouse; (3) the educational background of each spouse, together with the need of each spouse for additional training or education in order to achieve that spouse's income potential; (4) the employment history and earning potential of each spouse; (5) the standard of living established during the marriage; (6) the current and reasonably anticipated earnings of both spouses; (7) the current and reasonably anticipated expenses and needs of both spouses; (8) the properties of the parties, including those apportioned to him or her in the divorce or separate maintenance action; (9) custody of the children; (10) marital misconduct or fault of either or both parties if the misconduct has affected the economic circumstances of the parties, or contributed to the breakup of the marriage; (11) tax consequences; (12) existence of any support obligations from a prior marriage; and (13) such other factors the court considers relevant. *Dearybury*, 351 S.C. at 282–83, 569 S.E.2d at 369; *Patel v. Patel*, 347 S.C. 281, 555 S.E.2d 386 (2001); S.C.Code Ann. § 20–3–130(C) (Supp.2002). No one factor is dispositive. *Lide v. Lide*, 277 S.C. 155, 283 S.E.2d 832 (1981); *Allen*, 347 S.C. at 184, 554 S.E.2d at 425.

I am compelled to agree with Husband that, in this case, the Family Court arrived at an excessive amount in determining Wife's award of alimony. At the time of trial, Husband was fifty-one years old and earned about $217,000 annually. Wife was fifty-two years old, employed as a Deputy Coroner for Charleston County, and earned approximately $47,000 annually, or $3,924 per month. According to Wife's financial declaration, her total monthly expenses (including, *inter alia*, the mortgage on the marital home, $250 for anticipated credit card payments, $300 for anticipated lien payments on a new car, and a $789 entertainment expense) amount to about $5,730 per month. Consequently, the Family Court's award of $4,300 per month to the wife in alimony, added to her net monthly income

of $2,552, would afford her a monthly income of $6,852, thereby exceeding her needs by approximately $1,122 per month.

Although Wife established entitlement to alimony, the amount of the Family Court's award is excessive and amounts to an abuse of discretion. Accordingly, I vote to reverse the amount of alimony awarded and modify the Family Court's order to reduce the award of permanent periodic alimony to $3,000 per month.

## V. Attorney's Fees and Costs

Husband maintains the Family Court erred in ordering him to contribute $52,917.21 towards Wife's attorney's fees and costs. I disagree.

Under South Carolina Code Ann. § 20–3–130(H) (Supp. 2002), the judge may order one party to pay a reasonable amount to the other for attorney's fees and costs incurred in maintaining an action for divorce. *Smith v. Smith,* 327 S.C. 448, 486 S.E.2d 516 (Ct.App.1997). An award of attorney's fees will not be overturned absent an abuse of discretion. *Stevenson v. Stevenson,* 295 S.C. 412, 368 S.E.2d 901 (1988); *Shirley v. Shirley,* 342 S.C. 324, 536 S.E.2d 427 (Ct.App.2000); *see also Woodall v. Woodall,* 322 S.C. 7, 471 S.E.2d 154 (1996) (award of attorney's fees and costs is within sound discretion of Family Court judge). Before awarding attorney's fees, the Family Court should consider (1) each party's ability to pay his or her own fee; (2) the beneficial results obtained by the attorney; (3) the parties' respective financial conditions; and (4) the effect of the attorney's fee on each party's standard of living. *E.D.M. v. T.A.M.,* 307 S.C. 471, 415 S.E.2d 812 (1992); *Heins v. Heins,* 344 S.C. 146, 543 S.E.2d 224 (Ct.App.2001). In determining the amount of attorney's fees to award, the court should consider: (1) the nature, extent, and difficulty of the services rendered; (2) the time necessarily devoted to the case; (3) counsel's professional standing; (4) the contingency of compensation; (5) the beneficial results obtained; and (6) the customary legal fees for similar services. *Glasscock v. Glasscock,* 304 S.C. 158, 403 S.E.2d 313 (1991); *Bowers v. Bowers,* 349 S.C. 85, 561 S.E.2d 610 (Ct.App.2002).

Here, Husband abandoned the marital home, began an adulterous affair, refused to participate in marital counseling in any meaningful way, rejected Wife's attempts at reconciliation, and decided to commence marital litigation, thereby putting Wife to the task of defending against the action. In addition, the issues of equitable apportionment and distribution were highly contested at trial and, notwithstanding this Court's modifications to the Family Court's order on appeal, Wife's attorney obtained several beneficial results on her behalf, including an award of divorce on the ground of adultery and an equal division of the marital estate.

Having reviewed the award of attorney's fees in light of the applicable factors, I conclude the Family Court did not abuse its discretion. There is sufficient evidentiary support in the record to uphold the judge's award of attorney's fees.

## *CONCLUSION*

I vote to reverse the Family Court's order identifying $12,332 in credit card charges as marital debt subject to equitable division, and in allocating the debt to Husband. Wife made no showing and the record did not reveal that the credit card debts Wife incurred during the parties' separation were incurred for any purpose inuring to the benefit of Husband. Moreover, these credit card charges were incurred by Wife *subsequent* to the filing of marital litigation. Thus, the debt should not have been allocated to Husband.

Although Wife established entitlement to alimony, the amount of the Family Court's award is excessive and amounts to an abuse of discretion. Accordingly, I vote to reverse the amount of alimony awarded and modify the Family Court's order to reduce the award of permanent periodic alimony from $4,300 to $3,000 per month.

The court did not err in awarding Wife the marital home in partial realization of her share in the marital estate. In addition, the Family Court properly ordered Husband to contribute $52,917.21 towards Wife's attorney's fees and costs. I vote to affirm the judge's rulings regarding the marital home and the award of attorney's fees and costs.

For the foregoing reasons, I vote to affirm in part, reverse in part, and modify in part.