**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

Patrick Hunkler, Appellant,

v.

Sarah Frey, Respondent.

Appellate Case No. 2010-159287

———————

Appeal From Charleston County
Paul W. Garfinkel, Family Court Judge

———————

Unpublished Opinion No. 2012-UP-543
Heard September 10, 2012 – Filed October 3, 2012

———————

**AFFIRMED**

———————

Cynthia Barrier Patterson, of Columbia, for Appellant.

Robert N. Rosen, of Rosen Law Firm, LLC, of Charleston, for Respondent.

———————

**PER CURIAM:** Patrick Hunkler (Father) appeals from a family court order granting Sarah Frey (Mother) sole custody of their son (Son), arguing the court erred in (1) granting Mother sole custody of Son because she failed to show a substantial change of circumstances; (2) awarding Mother a tax deduction for Son because Father's payments exceeded the child support guidelines; (3) awarding

Mother $70,000 in attorney's fees; and (4) requiring Father and Mother to follow Son's doctor's recommendations because neither party requested the relief.  We affirm.[1]

1.      On appeal from the family court, this court reviews factual and legal issues de novo.  *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 651-52 (2011).  Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony.  *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651-52.  The burden is upon the appellant to convince this court that the family court erred in its findings.  *Id.*

2.      We find no error in the family court's decision to grant Mother sole custody of Son.  The controlling considerations in child custody controversies are the child's welfare and best interests.  *Divine v. Robbins*, 385 S.C. 23, 32, 683 S.E.2d 286, 291 (Ct. App. 2009).  In determining which parent should have custody of the child, "[t]he family court must consider the character, fitness, attitude, and inclinations on the part of each parent as they impact the child."  *Woodall v. Woodall*, 322 S.C. 7, 11, 471 S.E.2d 154, 157 (1996).  "In addition, psychological, physical, environmental, spiritual, educational, medical, family, emotional and recreational aspects of the child's life should be considered."  *Id.*  "Thus, when determining to whom custody shall be awarded, all the conflicting rules and presumptions should be weighed together with all of the circumstances of the particular case, and all relevant factors must be taken into consideration."  *Id.*

In *Altman v. Griffith*, 372 S.C. 388, 393, 642 S.E.2d 619, 622 (Ct. App. 2007), this court addressed our deference to the family court's election between fit parents:

> In gauging between fit parents as to who would better serve the best interests and welfare of the child in a custodial setting, the family court judge is in a superior position to appellate judges who are left only to review the cold record.  For this reason, custody determinations largely rest in the sound discretion of the family court judge.

---

[1]  We affirm pursuant to Rule 220(b)(1), SCACR.

In this case, the family court addressed the parents' problems with their joint custody arrangement in its order:

> Mother learned that Father was consistently refusing to follow the directions of the pediatrician . . . in failing to give [Son] needed medication, not hydrating him sufficiently, failing to use the humidifier, not allowing [Son] access to liquids in the heat, and allowing him to faint on one occasion on which he was taken to the emergency room. Father insists that [Son] does not have asthma in the face of a diagnosis sent by [his doctor] to the School District. Father does not agree with [Son's] pediatrician that he has a medical condition which needs monitoring and treatment. Father has never, by his own admission, given [Son] his inhaler.

> Given Father's antagonistic behavior toward Mother, his efforts to consistently change the agreement approved by this court in 2003, his refusal to cooperate with Mother and the doctor for [Son's] best interest, the difficulty these people have in communication, joint custody is not working in the best interest of the minor child. . . . Father agreed that the present joint custodian arrangement was not working.

> . . . .

> This court must determine which parent should be the custodial parent in that both parties in their amended pleadings asked for sole custody, with the Father asking in the alternative for shared custody. Let me make it very clear because of the obvious distrust existing between these parties, a shared custody arrangement would not be in the child's best interest and in the opinion of this [c]ourt, could end up being harmful to the child because of the increased litigation that would result from such an arrangement.

In its order denying Father's motion to amend, the court further addressed its decision to award Mother sole custody:

> [T]his change, while likely only one of semantics, is appropriate given [Father]'s attitude, and indeed, (in)actions regarding [Son's] medical care, . . . and his inability to <u>properly</u> communicate with [Mother] regarding issues requiring his attention or inviting his input . . . . [Father] cannot voluntarily fail to participate in the important decisions in his son's life and then complain that [Mother] has treated their parenting as a dictatorship. If [Father] cannot collaborate in decision making with [Mother], this [c]ourt does not believe that he would be capable of proper decision making on his son's behalf.

We give deference to the family court's determination and conclude the family court correctly examined the totality of the circumstances in reaching its decision to award Mother sole custody of Son.

3.      We find no error in the family court's decision to award Mother a tax deduction for Son. The allocation of the dependent tax exemption is within the family court's discretion. *Hudson v. Hudson*, 340 S.C. 198, 205, 530 S.E.2d 400, 403-04 (Ct. App. 2000); *see* S.C. Code Ann. § 20-3-130(F) (Supp. 2011) ("The court may elect and determine the intended tax effect of the alimony and separate maintenance and support as provided by the Internal Revenue Code and any corresponding state tax provisions. The [f]amily [c]ourt may allocate the right to claim dependency exemptions pursuant to the Internal Revenue Code and under corresponding state tax provisions and to require the execution and delivery of all necessary documents and tax filings in connection with the exemption."). Here, the family court determined that because neither the child custody nor the child support had been changed in Father's favor, the tax dependency deduction would remain with Mother. Because the court granted Mother sole custody of Son, we find the family court did not err in awarding Mother the tax deduction for Son.

4.      We find no error in the family court's decision to award Mother $70,000 in attorney's fees. "The award of attorney's fees and costs [is] within the sound discretion of the trial judge." *Perry v. Perry*, 315 S.C. 373, 376, 433 S.E.2d 911, 912 (Ct. App. 1993). In *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d

313, 315 (1991), our supreme court set forth the following factors to be considered in determining a reasonable attorney's fee: (1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) counsel's professional standing; (4) the contingency of compensation; (5) the beneficial results obtained; and (6) the customary legal fees for similar services. In *Spreeuw v. Barker*, 385 S.C. 45, 72, 682 S.E.2d 843, 857 (Ct. App. 2009), this court stated it normally would be concerned by an award of attorney's fees representing approximately 40% of the father's annual income; however, the family court based its award of attorney's fees not only on the factors set forth in *Glasscock*, but also on the father's uncooperative conduct in discovery and his evasiveness in answering questions with respect to his financial situation. Therefore, the court affirmed the fees because the father's uncooperative conduct greatly contributed to the litigation costs associated with the action. *Id.* at 72-73, 682 S.E.2d at 857. Also, in *Taylor v. Taylor*, 333 S.C. 209, 220, 508 S.E.2d 50, 56 (Ct. App. 1998), this court affirmed the family court's decision to award the wife attorney's fees and the amount it awarded when the husband had filed three family court actions against the wife and appealed all three; the wife consistently prevailed on most of the issues, yet the husband "haul[ed] [the] [w]ife back into court time and time again"; the husband was in a financial position to afford the suits, while the wife was not; and the court had the "added dimension of an uncooperative husband who did much to prolong and hamper a final resolution of the issues in this case," noting "[a]n adversary spouse should not be rewarded for such conduct." Further, in *Wooten v. Wooten*, 358 S.C. 54, 65-66, 594 S.E.2d 854, 860 (Ct. App. 2003), *aff'd in relevant part, rev'd in part*, 364 S.C. 532, 615 S.E.2d 98 (2005), this court affirmed the family court's total award of $75,129.21 for the wife's attorney's fees and costs, finding the amount was not excessive under the circumstances and given the wide disparity in the parties' incomes. The *Wooten* court also stated that the wife's counsel, who is the same counsel as Mother's in this case, is an "accomplished family practitioner with an excellent reputation in the community." *Id.*

In this case, the court stated it "feels the primary responsibility for the protracted nature of this litigation lies at the feet of the Father." The court also stated it "became convinced most of the problem in not being able to resolve the issues without a six-day trial of tremendous costs and fees was due to Father's unrealistic view of the issues." The court did note Mother also shared a portion of the blame in asking for an increase in child support and other issues. However, the court stated "[t]here was no way for Mother to settle with Father," and Father's actions increased Mother's attorney's fees. The court explained that during the six days of trial, "Mother's counsel was required to litigate numerous issues, conduct discovery

with little cooperation, go to hearings on the [amount] of the Guardian *ad litem*['s fees], prepare for extensive cross-examinations of numerous witnesses, prepare for direct examination, submit many exhibits and prepare a trial brief." Therefore, the court found Mother's total attorney's fees in the amount of $88,848.60, "while substantial, [were] necessary and reasonable in light of almost three years of litigation, the legal issues, numerous motions, numerous depositions, preparation for trial and a six-day trial."[2] The court further noted Father did not contest the number of hours, the hourly rates, or the reasonableness of the fees, hours, or costs.[3] Under our review of the circumstances of this case, we find no error in the family court's decision to award Mother $70,000 in attorney's fees and costs.

5. We find no error in the family court's decision to require Father and Mother to follow Son's doctor's recommendations. "The welfare and best interests of the child are the primary considerations in determining visitation." *Smith v. Smith*, 386 S.C. 251, 272, 687 S.E.2d 720, 731 (Ct. App. 2009). "In the absence of a clear abuse of discretion, the trial court's order regarding visitation rights will not be disturbed on appeal." *Frye v. Frye*, 323 S.C. 72, 76, 448 S.E.2d 586, 588 (Ct. App. 1994). In *Frye*, this court held the "family court may impose upon a noncustodial parent such conditions and restrictions on his visitation privileges as the court, in its discretion, thinks proper." *Id.* at 76, 448 S.E.2d at 588. "The privilege of visitation must yield to the best interests of the children and may be denied or limited if the best interests of the children will be served thereby." *Id.*; *see also Banks v. Med. Univ. of S.C.*, 314 S.C. 376, 382, 444 S.E.2d 519, 522 (1994) (holding a mother does not have a right to withhold necessary medical treatment from her child); *Nash v. Byrd*, 298 S.C. 530, 536, 381 S.E.2d 913, 916 (Ct. App. 1989) ("It is therefore the duty of the parents, irrespective of other considerations, to lend their aid in creating an atmosphere that will foster the best interests of the child. Neither parent has a right to use the child as a pawn or club in dealing with the other and, where such is done to the detriment of the child, it affords proper ground [for the family court] to deny or limit visitation privileges.").

Here, the court noted in its order that "[t]his responsibility often requires reliance on professionals better suited to make decisions not within the [c]ourt's expertise (e.g. medical diagnoses and treatment)" and "[t]his reliance is therefore, not only

---

[2] The court noted that in Mother's counsel's affidavit, he listed a total of $99,436.62 in attorney's fees and costs.
[3] In his brief on appeal, Father states he does not take issue with Mother's counsel's professional standing or customary fees.

appropriate, but well within the inherent power and responsibility of this [c]ourt to protect the welfare of the children in its jurisdiction." We find, in our review, that the family court did not err in requiring Father and Mother to follow Son's doctor's recommendations.

**AFFIRMED.**

**SHORT, KONDUROS, and GEATHERS, JJ., concur.**