### 1756

Sherry W. LANE, Erin E. Williamson, and John Gee Williamson, III, Appellants v. Peggy Bowie WILLIAMSON, North American Life and Casualty Company, and Appalachian National Life Insurance Company, Defendants, Of Whom Peggy Bowie Williamson is Respondent. And Peggy Bowie WILLIAMSON As Cross Complaining Party v. NORTH AMERICAN LIFE AND CASUALTY COMPANY and Appalachian National Life Insurance Company, and the above named Plaintiffs, Individually and/or as might be named Personal Representative of the Estate of John Gee Williamson, decedent, Defendants.

(414 S.E. (2d) 177)

Court of Appeals

*Frank J. Dana, III*, Greenville, *for appellants.*

*Timothy L. Brown*, Greenville, *for respondent.*

Heard Dec. 4, 1991.

Decided Jan. 13, 1992.

LITTLEJOHN, Judge:

In this action Plaintiffs-Appellants, Sherry W. Lane, Erin E. Williamson, and John Gee Williamson, III (Children) sued Peggy Bowie Williamson (Wife), North American Life and Casualty Company and Appalachian National Life Insurance Company, asking the Court to declare them the beneficiaries of two insurance policies issued on the life of their father, John Gee Williamson, Jr. (Husband). The circuit court ruled as a matter of law on Motion for Summary Judgment that the Wife was entitled to the funds. The Children appeal. We affirm.

## FACTS

John Gee Williamson, Jr. was first married to the mother of the Children-Plaintiffs in this action. Later he married Peggy Bowie Williamson with whom he lived for several years. They separated in October of 1988. In November 1988, she brought an action in the family court of Greenville County seeking separate maintenance and support. Temporary relief was requested. At the temporary relief hearing before the judge on November 22, 1988, the parties were present with their attorneys. Judge Johnson inquired, "Were you able to agree on a temporary settlement?"

Counsel for the Wife replied in the affirmative and stated, "Mr. Williamson would as well maintain insurance in full as he currently has; that is maintain it in the status quo on his life . . . we also agree that no assets will be sold until such time as the attorneys, both of us representing each party, agree that those would be sold."

Counsel for the Wife then said, "Have I left anything out?" Mr. Sullivan [Attorney for Husband] said, "No."

Thereafter, on the following day, the family court judge reduced to writing his directive as relates to the oral agreement in open court as follows:

> ... 'the attorneys presented an agreement to the Court. .' 'That the Defendant [decedent] agrees to maintain all insurance on his wife, the Plaintiff, as currently exist.' 'That no material assets shall be sold or otherwise altered until the parties, through their attorneys, fully agree.'

The Husband died April 19, 1989, before any other proceeding within the separate maintenance and support action.

At the temporary relief hearing, the Husband did not reveal to the court nor to his Wife the fact that on the previous day (November 21, 1988) he had applied to the Appalachian National Life Insurance Company for a change of beneficiary for a $100,000 policy naming the children as beneficiaries of the policy in lieu of his Wife. The change of beneficiary could not be effective until January 31, 1989, because under the terms of the policy the change had to be approved and acknowledged before the change became effective. The application for change of beneficiary included the following: "I agree that these changes shall be an amendment to my original application and further agree that the changes will not be effective until this application is approved by the company." The application was actually approved January 31, 1989.

Notwithstanding the Husband's agreement in open court to maintain the policies in status quo, on the following day (November 23, 1988) he applied to the North American Life and Casualty Company for a similar change in beneficiaries on a $10,000 policy. Apparently, no action, if necessary, was taken on this $10,000 policy.

It is the contention of the children that the Husband had the right to change the beneficiary. It is the contention of the Wife that the Husband had contracted away such right in her favor.

Both insurance companies acknowledge liability and have paid the amounts required by the policies into the Office of the Clerk of Court, and accordingly the two insurance

companies are no longer interested in this litigation.

Entitlement to the proceeds of the insurance policies depends upon the impact of the agreement entered into between the Husband and the Wife in open court on November 22, 1988. At the time of the temporary hearing the parties were before the judge for the purpose of determining the temporary relief, if any, to which the Wife was entitled. There was obviously a conflict at that time. In order to settle the matter and avoid pursuit of her claim, the Husband made an agreement. The insurance policies were obviously of substantial importance at that time. According to an affidavit of the Wife ". . . these policies were paid from joint accounts, from joint money and I was to be protected by these policies." She further averred:

> I never gave permission or agreed in any way for the beneficiaries to be changed from me to anyone else, either before or after the agreement reached in open Court or prior thereto.

She in actuality agreed, for a consideration, not to pursue other temporary relief in exchange for her Husband's agreement, among other things, to " . . . maintain insurance in full as he currently has; that is maintain it in status quo on his life."

Status quo of an insurance policy may be changed in either one of two important ways: (1) by failing to pay the premiums and (2) by naming substitute beneficiaries. Patently, it was the intent of both parties that the Wife remain the beneficiary. *Black's Law Dictionary* defines "status quo" as "[t]he existing state of things at any given date." Even assuming that the insured had a right to change the beneficiary, no such change had been brought about at the time he agreed in open court to maintain the status quo. She was the sole beneficiary at the time of the agreement.

A judge may bind the parties in open court with an oral order dictated and placed in the record. Unfortunately, the written order was not as full as it might have been on the issue now of importance, but the written order cannot be said to be inconsistent with the oral directive. This being true, the agreement made in open court and approved by the judge is fully enforceable. The Husband contracted

away his right to remove his Wife as beneficiary and substitute others.

The fact that an insured person normally has the right to change the beneficiary is of no real consequence in this case. While an insured person may under the terms of the policy change the beneficiary, the insured may also enter into a contract not to change the beneficiary, even though the right to change the beneficiary is set forth in the policy itself. On the date of the agreement the Wife was the sole beneficiary, and the Husband, for a consideration, gave up the right to deprive her of the benefits of the policies.

We find no South Carolina case directly on point, but the opinion of our Supreme Court in *Jefferson Pilot Life Insurance Company v. Gum*, 302 S.C. 8, 393 S.E. (2d) 180 (1990) is influencing. In that case the court ordered Roy Gum, the husband, to retain his first divorced wife as beneficiary of a life insurance policy. Upon his death the second wife, substituted beneficiary, claimed the proceeds of the policy. The trial judge granted summary judgment on the grounds that the first wife's claim was barred by laches and that the divorce decree, under which the first wife claimed, was null and void. The Supreme Court reversed because "Roy Gum was under a judicial order to maintain Loretta [first wife] as the beneficiary of a life insurance policy." The court said:

> In the absence of a modification of the order, it appears that Roy was still under an obligation to designate Loretta [first wife] as the beneficiary of the policy. Therefore, we conclude that the trial court erred in granting Betty's [second wife—substituted beneficiary] motion for summary judgment.

On May 14, 1990, more than a year after the death of the Husband, the family court apparently *ex parte*, and certainly without notice to the Children, issued a supplemental order clarifying the directives of the court and ruling that the Wife was entitled to the proceeds of the two insurance policies. Such an order is of questionable purity; and we reach our decision in favor of the Wife independent of that directive.

Affirmed.

GARDNER and GOOLSBY, JJ., concur.