615 S.E.2d 98

**Thomas Durrette WOOTEN, Jr., Plaintiff,**

**v.**

**Mona Rae WOOTEN, Defendant and Third Party Plaintiff,**

**v.**

**Pam Perry, Third Party Defendant,**

**of whom Thomas Durrette Wooten, Jr., is Petitioner/Respondent**

**and**

**Mona Rae Wooten, is Respondent/Petitioner.**

**and**

**Thomas Durrette Wooten, Jr., Respondent,**

**v.**

**Mona Rae Howell Wooten, Petitioner.**

**No. 25977.**

Supreme Court of South Carolina.

Heard March 2, 2005.

Decided May 2, 2005.

Refiled June 6, 2005.

534

536

Robert N. Rosen of Rosen Law Firm, L.L.C., of Charleston, and Donald B. Clark, of Charleston, for Mona Rae Wooten (Respondent/Petitioner and Petitioner).

James T. McLaren and C. Dixon Lee, III, both of McLaren & Lee, of Columbia; and Lon H. Shull, III, of Andrews &

Shull, P.C., of Mt. Pleasant, for Thomas Durrette Wooten, Jr. (Petitioner/Respondent and Respondent).

## ORDER

Respondent/Petitioner (Wife) filed a petition for rehearing in which she asked the Court to clarify whether it intended to reverse the Court of Appeals' remand of the issue of the alimony award to then family court. Petitioner/Respondent (Husband) filed a return in opposition.

We grant the petition for rehearing, withdraw the former opinion, and substitute the attached opinion.

IT IS SO ORDERED.

s/ Jean H. Toal, C.J.

s/ James E. Moore, J.

s/ John H. Waller, Jr., J.

s/ E.C. Burnett, III, J.

s/ Costa M. Pleicones, J.

Justice BURNETT:

This divorce case raises issues related to equitable distribution and alimony. We granted both parties' petitions for a writ of certiorari in one appeal and a certiorari petition in the second appeal to review issues addressed in two opinions issued by the Court of Appeals. *Wooten v. Wooten*, 356 S.C. 473, 589 S.E.2d 769 (Ct.App.2003); *Wooten v. Wooten*, 358 S.C. 54, 594 S.E.2d 854 (Ct.App.2003). We consolidate the two appeals for review and resolution. *See* Rule 214, SCACR. We affirm in part and reverse in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Thomas D. Wooten, Jr. (Husband) and Mona Rae Wooten (Wife) were married in 1976. The couple met in Columbia while Husband was in medical residency training and moved to Johns Island in 1981, where they lived until Husband moved out of the marital home in 1999. Both parties had adulterous affairs in the mid–1980s, but admitted the affairs to each other, attended counseling sessions, and reconciled.

Wife testified Husband's decision to leave surprised her and she believed their marriage, while not perfect, was solid.

Husband, now age 56, is an anesthesiologist with a gross annual income of $217,000. Wife, a registered nurse by training, is a county deputy coroner with a gross annual income of $47,000. After moving to Johns Island, Wife stayed home for several years to care for the couple's three young children. The children were emancipated at the time of trial. Wife also managed the billing of Husband's patients to increase the family's income. Wife's business duties ended in 1987 when Husband hired a secretary to do the billing and then later merged his practice with other anesthesiologists.

The couple and their children lived an affluent lifestyle. They extensively renovated and expanded their home in the early 1980s and often entertained family and friends on weekends at the home and on their boat. Husband frequently went fishing and hunting. They belonged to a country club and regularly went out to dinner. Husband bought and sold several boats during the marriage, including at least one capable of deep-sea fishing trips, and kept two boats valued at $30,000 as part of his division of the couple's personal property.

Husband began a adulterous relationship before marital litigation commenced. Husband admitted his misconduct and has not appealed the family court's grant of a divorce to Wife on the ground of adultery.

The parties agreed on an equal division of the $1.3 million marital estate, which consisted primarily of the $675,000 marital home, which was subject to mortgages totaling $230,625; Husband's retirement and pension accounts of $844,026; the $41,000 valuation of Husband's interest in his medical practice; and Wife's retirement account of $11,077.

The family court, essentially adopting a proposal offered by Wife's accountant, divided the marital assets equally by awarding the marital home to Wife and the bulk of Husband's retirement accounts to him. Husband also was ordered to pay Wife $4,300 per month in alimony, with Wife receiving $2,867 per month after taxes. The family court denied Wife's request Husband secure the alimony award by maintaining a life

insurance policy naming her as beneficiary. The family court ordered Husband to pay Wife's attorney's fees of $52,917.

## ISSUES

I. Did the Court of Appeals err in reversing the family court's decision to award the marital home to Wife in equitably distributing the marital estate?

II. Did the Court of Appeals err in reversing the family court's decision to award a credit card debt, incurred by Wife after marital litigation began, to Husband in equitably distributing the marital estate?

III. Did the Court of Appeals err in affirming the family court's decision not to require Husband to secure an alimony award to Wife with a life insurance policy naming Wife as beneficiary?

IV. Did the Court of Appeals err in affirming the family court's decision to require Husband to pay Wife's attorney's fees and costs, where the Court of Appeals reversed the family court's decision in favor of Wife on the primary issues in dispute?

## STANDARD OF REVIEW

In appeals from the family court, an appellate court has the authority to find the facts in accordance with its own view of the preponderance of the evidence. *Rutherford v. Rutherford,* 307 S.C. 199, 414 S.E.2d 157 (1992); *Owens v. Owens,* 320 S.C. 543, 466 S.E.2d 373 (Ct.App.1996). This broad scope of review does not, however, require the appellate court to disregard the findings of the family court. *Stevenson v. Stevenson,* 276 S.C. 475, 279 S.E.2d 616 (1981). Neither is the appellate court required to ignore the fact that the family court, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Cherry v. Thomasson,* 276 S.C. 524, 280 S.E.2d 541 (1981).

## LAW AND ANALYSIS

### I. MARITAL HOME

Testimony during the five-day trial focused primarily on the equitable division of the two major marital assets—the

marital home and the retirement accounts. Husband sought to have the assets divided equally by awarding half the retirement accounts to each, selling the house to take full advantage of the $500,000 capital gains tax exclusion for married spouses, and dividing the sale proceeds so that each party could purchase a smaller house with no mortgage.

Husband and his accountant testified that, if Wife were awarded the home, Husband would suffer tax and withdrawal penalties equaling fifty-one percent of any funds he withdrew if required to liquidate his retirement accounts to satisfy the equitable division award and make a substantial down-payment on a home for himself. Wife sought to keep the house as part of her division of the marital estate.

The family court divided the primary marital property and debts in a manner which gave each party a net total of $664,078. Husband received assets of $590,087 in IRA retirement funds, $116,543 in his medical practice's retirement pension, the $41,000 value of his medical practice, and debt of $71,230 (representing 75 percent of the home equity line) and a credit card debt of $12,322. Wife received assets of the $675,000 marital home, $137,395 from Husband's IRA account, her retirement fund of $11,077, and debts of $135,651 for the first mortgage on the marital home and $23,743 (representing 25 percent of the home equity line).[1]

The family court did not consider Husband's fault in awarding the home to Wife, but primarily considered the length of the marriage, Wife's needs, the parties' lifestyle during the marriage, and Husband's ability to pay. The family court did not award the home as an incident of support, but as an asset to be equitably divided, and did not consider the custody or interests of the children because they were emancipated. Further, the family court did not consider speculative tax ramifications related to either the potential sale of the home by Wife or potential early withdrawals from retirement accounts by Husband.

---

1. Recognizing the potential difficulty of making joint payments, the family court ordered that Wife's portion of the home equity line ($23,-743) be deducted from Wife's portion of the retirement accounts, and Husband would make all payments on that debt. Thus, Wife actually received $113,652 from Husband's IRA funds while Husband kept $613,830 in those funds.

A divided Court of Appeals reversed, with the majority finding the family court abused its discretion by performing an inequitable "in-kind" distribution of dissimilar assets and by failing to consider the tax consequences of Husband's necessary liquidation of his retirement accounts. *Wooten,* 358 S.C. at 60–64, 594 S.E.2d at 858–60.

Wife argues the Court of Appeals' majority erred in reversing the family court's decision to award the marital home to her in equitably distributing the marital estate by incorrectly applying the standards for awarding a house as an incident of support. Furthermore, the Court of Appeals erred in concluding the division was inequitable or likely to result in tax consequences by forcing Husband to liquidate his retirement accounts to comply with the order. Husband contends the family court erred in failing to consider the tax consequences of its order.

■■ The apportionment of marital property is within the discretion of the family court and will not be disturbed on appeal absent an abuse of discretion. *Morris v. Morris,* 295 S.C. 37, 39, 367 S.E.2d 24, 24 (1988). In order to effect an equitable apportionment, the family court may require the sale of marital property and a division of the proceeds. *Donahue v. Donahue,* 299 S.C. 353, 360, 384 S.E.2d 741, 745 (1989). However, the court should first try to make an "in-kind" distribution of the marital assets, *i.e.,* award a share of each type of asset to each spouse. *Id.*

■ The family court may grant a spouse title to the marital home as part of the equitable distribution because it is not feasible to make an in-kind distribution of the home. *Donahue,* 299 S.C. at 360, 384 S.E.2d at 745; *Brown v. Brown,* 279 S.C. 116, 302 S.E.2d 860 (1983) (upholding family court's decision to award marital home to wife as part of equitable distribution of marital property), *overruled on other grounds by Tiffault v. Tiffault,* 303 S.C. 391, 401 S.E.2d 157 (1991); *Josey v. Josey,* 291 S.C. 26, 32, 351 S.E.2d 891, 895 (Ct.App. 1986) (reversing family court's decision not to award marital home to wife as part of equitable distribution because family court believed she could not afford it, where wife "love[d] the home dearly," husband did not object to award of house to wife so long as it did not result in increased alimony, and such

a disposition under then-existing tax laws would minimize possibility of husband paying capital gains taxes).

The family court should give appropriate weight to the fifteen statutory factors in making an equitable distribution of marital property. S.C.Code Ann. § 20–7–472 (Supp.2004). Such factors include the income and earning potential of each spouse, the opportunity for future acquisition of capital assets, the physical and emotional health of each spouse, and the desirability to award the family home as part of the equitable distribution. Section 20–7–472(4), (5) and (10).

■ The family court is required to consider the tax consequences to each party resulting from equitable apportionment. Section 20–7–472(11). However, if the apportionment order does not contemplate the liquidation or sale of an asset, then it is an abuse of discretion for the court to consider the tax consequences from a speculative sale or liquidation. *Bowers v. Bowers,* 349 S.C. 85, 97–98, 561 S.E.2d 610, 617 (Ct.App. 2002); *Ellerbe v. Ellerbe,* 323 S.C. 283, 289, 473 S.E.2d 881, 884 (Ct.App.1996); *Graham v. Graham,* 301 S.C. 128, 131, 390 S.E.2d 469, 471 (Ct.App.1990).

Husband relies in part on law relating to the award of exclusive use and possession of the marital home for a defined term as an incident of support. *E.g., Whitfield v. Hanks,* 278 S.C. 165, 293 S.E.2d 314 (1982) (discussing possession of residence for specified period as incident of support); *Harlan v. Harlan,* 300 S.C. 537, 541–42, 389 S.E.2d 165, 168 (Ct.App. 1990) (explaining family court, when awarding marital home for reasonable period as incident of support, must balance competing interests between claim of dependent spouse or children against claim of nonoccupying spouse for his share of marital home; court should consider factors such as need for adequate shelter for minors, suitable housing for handicapped or infirm spouse, and inability of occupying spouse to otherwise obtain adequate housing); *Johnson v. Johnson,* 285 S.C. 308, 311, 329 S.E.2d 443, 445 (Ct.App.1985) (same); *see also* S.C.Code Ann. § 20–7–472(10) (Supp.2004).

■ The incident-of-support cases are largely irrelevant in deciding whether the marital home should be awarded to one spouse in the equitable division of marital property. A decision on whether to award the marital home to one spouse for a

defined period as an incident of support and a decision on whether to award the home permanently to one spouse in equitable distribution require different analyses. While it is proper for the family court to consider support-related facts in both settings, the lack of a support-related rationale should not necessarily prevent or reduce the likelihood of an award of the marital home to one spouse in equitable distribution.

Instead, as we have done in deciding these appeals, the family court should focus on a fair distribution of the entire marital estate. The family court should consider not only financial factors (including tax consequences, if any) affecting the distribution of the marital home, but also the physical and emotional well-being of each spouse as it relates to the marital home. In other words, decisions relating to the equitable distribution of the marital home should not always be based solely or primarily on a cold, rational calculation of dollars and cents. The family court is free to consider other, less tangible factors asserted by a spouse, weighing those in concert with the financial impact on the parties.

Applying the above principles, we reverse the Court of Appeals and affirm the family court's award of the marital home to Wife for four reasons.

First, the Court of Appeals' majority erred in concluding the family court was required to consider the tax consequences to Husband. The order neither contemplates nor requires, either explicitly or implicitly, the sale of the marital home by Wife or the liquidation of retirement funds by Husband. Such a conclusion is reached only by accepting at face value Husband's assertions he cannot afford to comply with the order and buy himself a home without liquidating his retirement accounts.

Second, the record shows Husband's income and earning potential far exceed Wife's; therefore, Husband's ability to purchase a home and acquire other capital assets in the future is also greater than Wife's.

Third, Wife's emotional attachment to the family home and her wish to keep it in the family in order for future generations to enjoy is a factor to be considered in awarding the home to her, as that likely will benefit her emotional and

physical health. In contrast, Husband viewed the disposition of the marital home primarily in financial terms.

Fourth, the record reveals Husband's claims of financial ruin are unfounded. Husband's gross monthly income exceeds $18,000, with a net spendable income exceeding $12,000 per month. We agree with the family court that, accepting Husband's expenses as enumerated in his financial declaration, including the alimony payment, home equity line payment, and a $2,000 mortgage payment to buy his own house, Husband's needs can be met from his income. Moreover, Husband's earning capacity is more than four times that of Wife's, with the potential to be even higher.

We are not persuaded by Husband's implication a total debt of $236,469 resulting from the order is immediately due and payable and thus requires liquidation of his retirement funds. The home equity line which was allocated to Husband includes the $30,000 borrowed for attorney's fees during litigation. The home equity line does not have to be paid in full immediately and was accounted for by the family court as one of Husband's monthly expenses. Whether Husband's own attorney's fees are immediately payable is unknown. The only debt which is immediately due and payable is $52,917 for Wife's attorney' fees.

The family court properly effected an equitable division of the marital estate and did not abuse its discretion in awarding the marital home to Wife. Additionally, the Court of Appeals remanded the alimony issue because it was closely related to the award of the marital home and recalculation of various expenses would be necessary if Wife did not remain in the marital home. *See Wooten,* 358 S.C. at 64, 594 S.E.2d at 860. Given our decision upholding the family court's award of the marital home to Wife, further consideration of the amount of alimony award is unnecessary.

## II. CREDIT CARD DEBT

 Husband vacated the marital home in February 1999. He continued paying the two mortgages and voluntarily gave money to Wife to pay household and child-related expenses until filing an action for separate support and maintenance in June 1999. From June to December 1999, when the pendente

lite order required Husband to pay temporary alimony, Husband continued paying the mortgages but did not provide any additional funds to Wife.

Wife incurred a credit card debt of $12,322 from June to December 1999. Wife testified the expenditures were for groceries, dining out, veterinary bills, medications, gasoline, Christmas gifts, and tuition for their son. The record does not contain credit card bills listing the expenses.

The family court treated the credit card debt as marital debt and apportioned it entirely to Husband. The Court of· Appeals reversed, holding the credit card debt was not presumed to be a marital debt because it was incurred after the date of commencement of marital litigation. Wife failed to carry her burden of proving the debt was incurred for the benefit of the marriage; therefore, the family court erred in apportioning it as a marital debt. *Wooten,* 358 S.C. at 59–60, 594 S.E.2d at 857–58.

"Marital property" is defined as "all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation.... " S.C.Code Ann. § 20–7–473 (Supp.2004). For purposes of equitable distribution, a "marital debt" is a debt incurred for the joint benefit of the parties regardless of whether the parties are legally liable or whether one party is individually liable. *Hardy v. Hardy,* 311 S.C. 433, 436–37, 429 S.E.2d 811, 813 (Ct.App.1993).

Marital debt, like marital property, must be specifically identified and apportioned in equitable distribution. *Smith v. Smith,* 327 S.C. 448, 457, 486 S.E.2d 516, 520 (Ct.App.1997). In equitably dividing the marital estate, the family court must consider "liens and any other encumbrances upon the marital property, which themselves must be equitably divided, or upon the separate property of either of the parties, and any other existing debts incurred by the parties or either of them during the course of the marriage." S.C.Code Ann. § 20–7–472(13) (Supp.2004). This statute creates a rebuttable presumption that a debt of either spouse incurred prior to the beginning of marital litigation is a marital debt and must be factored in the totality of equitable apportionment. *Hickum v. Hickum,* 320 S.C. 97, 102, 463

S.E.2d 321, 324 (Ct.App.1995); *Hardy,* 311 S.C. at 436–37, 429 S.E.2d at 813–14. When the debt is incurred before marital litigation begins, the burden of proving a debt is nonmarital rests upon the party who makes such an assertion. *Hickum,* 320 S.C. at 103, 463 S.E.2d at 324.

 When a debt is incurred after the commencement of litigation but before the final divorce decree, the family court may equitably apportion it as a marital debt when it is shown the debt was incurred for marital purposes, *i.e.,* for the joint benefit of both parties during the marriage. *Jenkins v. Jenkins,* 345 S.C. 88, 104–05, 545 S.E.2d 531, 540 (Ct.App. 2001) (remanding for family court to determine whether payments or debts incurred by husband after filing of litigation were marital debts); *Peirson v. Calhoun,* 308 S.C. 246, 252–53, 417 S.E.2d 604, 607–08 (Ct.App.1992) (finding that a second mortgage and other loans obtained by husband post-separation were marital debts). When a debt is incurred after marital litigation begins, the burden of proving the debt is marital rests upon the party who makes such an assertion.

Wife argues the Court of Appeals erred because it failed to recognize a marital debt may arise after marital litigation is filed. Wife asserts the credit card debt was incurred for the benefit of both parties during the marriage and should be apportioned to Husband. We disagree.

The Court of Appeals correctly concluded Wife incurred the credit card debt after the marital litigation was filed and the record reveals the debt was not incurred for the joint benefit of the parties during the marriage. Wife failed to carry her burden of proving the credit card debt was a marital debt.[2]

## III. LIFE INSURANCE TO SECURE AWARD OF ALIMONY

 Husband maintained a $1 million life insurance policy during the marriage, paying an annual premium of $2,220. Although the beneficiary named in the policy was a trust, it was maintained for the benefit of Wife and the children. The

---

2. Like the Court of Appeals, we express no opinion on whether the family court could have required Husband to reimburse Wife for some or all of these charges as an incident of support. *Wooten,* 358 S.C. at 60 n. 2, 594 S.E.2d at 858 n. 2.

family court rejected Wife's request Husband be ordered to maintain the policy, with Wife as the beneficiary, as security for Wife's alimony award. The family court found no "compelling reason" for such a requirement, reasoning Wife was employed in a relatively secure employment with a substantial income and benefits, there were no minor children, and neither Husband nor Wife suffered from any major or debilitating health problems.

The Court of Appeals affirmed, citing its own precedent and holding the family court correctly ruled that a "compelling reason" must exist to warrant the maintenance of life insurance by the payor spouse to secure an alimony award. The Court of Appeals explained it has required a showing of special circumstances or a compelling reason before requiring the purchase or maintenance of life insurance as security for alimony or child support obligations. Neither the alimony nor child support statutes set forth the requirement of special circumstances or compelling reason, but the Court of Appeals, adhering to its precedent, found the requirement exists in both statutes. *Wooten*, 356 S.C. at 476–77, 589 S.E.2d at 770–71. The Court of Appeals examined the record in light of the statutory factors and upheld the family court's denial of Wife's request for life insurance to secure the alimony award. *Id.* at 478, 589 S.E.2d at 771–72.

Wife, relying primarily on *Gilfillin v. Gilfillin*, 344 S.C. 407, 544 S.E.2d 829 (2001), argues the Court of Appeals erred by grafting the "compelling reason" requirement onto a statute which simply requires an analysis and balancing of statutory factors in deciding whether to secure an alimony award with life insurance. Wife further contends the Court of Appeals erred in upholding the family court's ruling after examining the record in light of the statutory factors.

It is a settled proposition of law that a former wife who is entitled to alimony has an insurable interest in her former husband's life. *Shealy v. Shealy*, 280 S.C. 494, 497, 313 S.E.2d 48, 50 (Ct.App.1984). The parties in a divorce proceeding may agree, in a private agreement subsequently merged into the court's order, that a payor spouse shall maintain life insurance to secure an award of alimony or child support. *Mitchell v. Mitchell*, 283 S.C. 87, 93, 320 S.E.2d 706,

710 (1984); *Carnie v. Carnie,* 252 S.C. 471, 473, 167 S.E.2d 297, 298 (1969); *Lane v. Williamson,* 307 S.C. 230, 414 S.E.2d 177 (Ct.App.1992).

At common law, the obligation to pay periodic alimony ended at death unless a spouse binds his or her estate for the payment of alimony by agreement. *McCune v. McCune,* 284 S.C. 452, 455, 327 S.E.2d 340, 341 (1985). This Court first approved the use of life insurance as security for a support award in *Fender v. Fender,* 256 S.C. 399, 182 S.E.2d 755 (1971). In that case, we affirmed a divorce decree requiring the husband to maintain a life insurance policy to assure funds would be available for the college education of his minor child. We relied on the grant of broad powers contained in the child support statute,[3] finding the only limits are that court-ordered "provisions shall be just and equitable, considered in light of the circumstances of the parties, the nature of the case, and the best interests of the children." *Fender,* 256 S.C. at 409, 182 S.E.2d at 759; *see also Jackson v. Jackson,* 264 S.C. 599, 602–03, 216 S.E.2d 530, 531 (1975) (affirming divorce decree which did not require maintenance of life insurance by husband to secure college education of his children because circumstances showed it was not necessary); *Brown v. Brown,* 270 S.C. 370, 242 S.E.2d 422 (1978) (affirming divorce decree requiring maintenance of life insurance by husband to secure college education of child).

In 1985, the Court of Appeals, relying on *Fender* and the child support statute, S.C.Code Ann. § 20–3–160 (1985), held the family court has the authority to require a payor spouse to maintain a life insurance policy naming his child as beneficiary, provided the requirement is "based on justice, equity, and compelling reasons for this necessity." *Ivey v. Ivey,* 286 S.C. 315, 318, 334 S.E.2d 123, 125 (Ct.App.1985) (finding no compelling reason requiring husband to secure child support with life insurance); *see also Sutton v. Sutton,* 291 S.C. 401, 353 S.E.2d 884 (Ct.App.1987) (affirming divorce decree requiring husband to maintain life insurance to secure child support).

---

**3.** The language of the present child support statute, S.C.Code Ann. § 20–3–160 (1985), is identical to § 20–115 of the 1962 Code interpreted in *Fender.*

In *Hardin v. Hardin*, 294 S.C. 402, 365 S.E.2d 34 (Ct.App. 1987), the Court of Appeals in a case of first impression concluded the family court required either specific statutory authority or a finding of special circumstances before it could require a payor spouse to purchase life insurance to secure the payment of periodic alimony beyond the payor spouse's death. The family court lacked either form of authority in this instance and, thus, erred in requiring husband to purchase a policy. *Id.* at 404, 365 S.E.2d at 35–36.

The Court of Appeals in subsequent cases imposed the requirement of a showing of special circumstances or a compelling reason before a payor spouse could be ordered to secure the payment of alimony or child support with a life insurance policy. Such special circumstances or compelling reasons include major health problems of the payor spouse. *Hickman v. Hickman*, 294 S.C. 486, 488, 366 S.E.2d 21, 23 (Ct.App.1988) (finding no special circumstances requiring husband to secure periodic alimony award with life insurance); *Shambley v. Shambley*, 296 S.C. 405, 408, 373 S.E.2d 689, 690 (Ct.App.1988) (finding no compelling reason requiring husband to secure child's future support and education expenses with life insurance); *Ferguson v. Ferguson*, 300 S.C. 1, 5, 386 S.E.2d 267, 269 (Ct.App.1989) (finding no special circumstances requiring husband to secure periodic alimony award with life insurance); *Harlan v. Harlan*, 300 S.C. 537, 540, 389 S.E.2d 165, 167 (Ct.App.1990) (finding no compelling reason requiring husband to secure child support with life insurance).

In 1990, the Legislature amended S.C.Code Ann. § 20–3–130 (Supp.2004) to codify the common law rule that periodic alimony terminates at death, but provided an exception to this rule when alimony is secured pursuant to subsection 20–3–130(D). *Gilfillin*, 344 S.C. at 412, 544 S.E.2d at 831.

Section 20–3–130 now provides, in pertinent part:

(B) Alimony and separate maintenance and support awards may be granted pendente lite and permanently in such amounts and for periods of time subject to conditions as the court considers just including, but not limited to:

(1) Periodic alimony to be paid but terminating on the remarriage or continued cohabitation of the supported spouse or upon the death of either spouse (except as

secured in subsection (D)) and terminable and modifiable based upon changed circumstances occurring in the future. . . .

(D) In making an award of alimony or separate maintenance and support, the court may make provision for security for the payment of the support including, but not limited to, requiring the posting of money, property, and bonds and may require a spouse, with due consideration of the cost of premiums, insurance plans carried by the parties during marriage, insurability of the payor spouse, the probable economic condition of the supported spouse upon the death of the payor spouse, and any other factors the court may deem relevant, to carry and maintain life insurance so as to assure support of a spouse beyond the death of the payor spouse.

In *Gilfillin*, we stated subsection (D) must be strictly construed because it is in derogation of the common law rule that periodic alimony terminates at the death of the payor spouse. We held that life insurance is the only permitted means of securing alimony beyond the life of the payor spouse and struck down the family court's creation of an alimony trust. We stated that "[w]ith the enactment of subsection 20–3–130(D), the Legislature provided that life insurance could be used to secure such payment whenever the family court made factual findings concerning the five factors favored requiring such insurance." *Gilfillin*, 344 S.C. at 414, 544 S.E.2d at 832. Further, the "use of life insurance is restricted in subsection (D) for use only after the family court makes comprehensive review of five distinct issues. . . ." *Id.* We noted several of the pre–1990 Court of Appeals' cases listed above which require a finding of "special circumstances," but did not explicitly endorse or reject such a requirement.[4]

Since 1990, the Court of Appeals has continued to require a showing of "special circumstances" or a "compelling reason" before the family court may order the purchase or maintenance of life insurance as security for an alimony or child

---

4. Justice Moore, dissenting, appeared to endorse the requirement of "special circumstances" to secure an alimony award. *See Gilfillin*, 344 S.C. at 416 n. 1, 544 S.E.2d at 833 n. 1 (*Hardin* and cases following it "do not prohibit ordering life insurance to secure alimony if there are special circumstances or statutory authority").

support obligation. *Wooten,* 356 S.C. at 477, 589 S.E.2d at 771 ("precedent of this court, both before and after 1990, has consistently applied the 'compelling reason' standard to secure the payment of alimony and child support"); *Mallett v. Mallett,* 323 S.C. 141, 150, 473 S.E.2d 804, 810 (Ct.App.1996) (finding no compelling reason requiring husband to secure child support award with life insurance); *McElveen v. McElveen,* 332 S.C. 583, 603–04, 506 S.E.2d 1, 11–12 (Ct.App.1998) (finding no compelling reason requiring husband to secure child support and alimony payments with life insurance); *Allen v. Allen,* 347 S.C. 177, 186–87, 554 S.E.2d 421, 426 (Ct.App.2001) (remanding for family court to reconsider decision requiring husband to secure alimony award with life insurance by making a comprehensive review of statutory factors, and mentioning precedent requiring a showing of special circumstances for such security); *Roberson v. Roberson,* 359 S.C. 384, 391–92, 597 S.E.2d 840, 844 (Ct.App.2004) (upholding ruling which required husband to secure alimony award with life insurance where record revealed family court properly considered statutory factors; Court of Appeals cited *Wooten,* 356 S.C. 473, 589 S.E.2d 769, which requires showing of special circumstances or compelling reason). *See also* John J. Michalik, *Divorce: Provision in Decree That One Party Obtain or Maintain Life Insurance for Benefit of Other Party or Child,* 59 A.L.R.3d 9 (1974).

We conclude, in clarifying *Gilfillin,* the family court must conduct a comprehensive review of the statutory factors to determine whether special circumstances exist which require the purchase or maintenance of a life insurance policy to secure an alimony award. Although the term "special circumstances" is not found in the statute, the Legislature was aware of prior case law on this issue when it enacted subsection 20–3–130(D), which indicates the Legislature anticipated the provision would be applied in light of existing precedent. *See State v. Bridgers,* 329 S.C. 11, 14, 495 S.E.2d 196, 197 (1997) (Legislature is presumed to be aware of common law when enacting statutes and using terms that have a well-recognized meaning in the law); *Berkebile v. Outen,* 311 S.C. 50, 53, 426 S.E.2d 760, 762 (1993) (basic presumption exists that the Legislature has knowledge of previous legislation when later statutes are passed on a related subject).

■ However, we disapprove of the requirement of a showing of a "compelling reason" before life insurance may be ordered to secure an alimony award. While the difference between "special circumstances" and a "compelling reason" may appear semantic, use of the latter term arguably places a higher burden on the spouse requesting security. We also reject the conclusion a "court-mandated requirement for life insurance to secure the alimony payments is the exception, not the rule." *Wooten,* 356 S.C. at 478, 589 S.E.2d at 772.

The Court of Appeals' requirement of a "compelling reason," combined with its view that court-mandated life insurance is the exception, not the rule, effectively established a presumption against ordering life insurance to secure an alimony award. The Legislature did not intend to establish a presumption in favor of or against such security under the statute. Instead, as we indicated in *Gilfillin,* the statute contemplates a comprehensive review of the factors set out in subsection 20–3–130(D). If that review reveals the existence of special circumstances in which the supported spouse establishes the need for the security and the payor spouse is capable of providing it, the family court may order the award be secured with life insurance.

■ In making such a determination, the analysis should begin with the supported spouse's need for such security, *i.e.,* consideration of the supported spouse's probable economic condition in the event of the payor spouse's death. The family court should consider the supported spouse's age, health, income earning ability, and accumulated assets. If a need for security is found, the family court should next consider the payor spouse's ability to secure the award with life insurance, *i.e.,* the payor spouse's age, health, income earning ability, accumulated assets, insurability, cost of premiums, and insurance plans carried by the parties during the marriage. The cost of premiums could be assigned solely to the payor spouse, solely to the payee spouse, or shared between them.[5]

---

5. Alimony payments terminate "on the remarriage or continued cohabitation of the supported spouse or upon the death of either spouse" and are "terminable and modifiable based upon changed circumstances occurring in the future." Section 20–3–130(B)(1). A requirement that an alimony award be secured with life insurance is similarly terminable and modifiable.

In the instant case, Wife is in good health, has a stable income and substantial assets with which she may support herself should Husband predecease her and alimony payments cease. Husband can afford the premiums, carried the policy during the marriage, and apparently is in good health and insurable. We do not find the existence of special circumstances giving rise to a need for security in this case. We affirm the family court and Court of Appeals' application of the statutory factors to find Husband was not required to purchase life insurance to secure Wife's alimony award.[6]

## IV. WIFE'S ATTORNEY'S FEES

Husband argues he should not be required to pay Wife's attorneys' fees because the Court of Appeals reversed the family court's ruling in favor of Wife on the main issues in dispute, the distribution of the marital home and the credit card debt. Our resolution of these appeals largely nullifies Husband's argument. We affirm. *See Glasscock v. Glasscock*, 304 S.C. 158, 403 S.E.2d 313 (1991) (listing factors to consider in awarding attorney's fees, including beneficial results obtained).

## CONCLUSION

We reverse the Court of Appeals and award the marital home to Wife in the equitable division of the marital estate. We affirm the Court of Appeals and conclude Wife's credit card debt was not a marital debt. We reverse the Court of Appeals' requirement the family court find a "compelling reason" before requiring a spouse to secure an alimony award with life insurance, but affirm the conclusion Husband is not required to secure Wife's alimony award with life insurance. We affirm the Court of Appeals and require Husband to pay Wife's attorney's fees in the amount of $52,917. The designation of the credit card debt as nonmarital increases the size of the marital estate by $12,322 and affects the equitable distri-

---

6. Some of the cited Court of Appeals' opinions addressed the issue of securing a child support obligation with life insurance. Our decision today addresses only the securing of an alimony award with life insurance as provided by statute. We express no opinion on the analysis established by the Court of Appeals in the securing of a child support award.

bution of Husband's IRA funds. We remand this case to the family court for reconsideration of that issue in a manner consistent with this opinion.

**AFFIRMED IN PART; REVERSED IN PART.**

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.