THIS OPINION
 HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN
 ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Melissa Burrell
 Cline, Appellant,
 v.
 Thomas A.
 Cline, Respondent.
 
 
 

Appeal From Greenville County
 Leslie K. Riddle, Family Court Judge
Unpublished Opinion No. 2008-UP-267
Heard April 9, 2008  Filed May 16, 2008
AFFIRMED

 
 
 
 O.W. Bannister, of Greenville, for Appellant.
 David Michael Collins, Jr., of Spartanburg, for Respondent.
 
 
 

PER CURIAM:  In
 this domestic action, Melissa Burrell Cline (Wife) appeals the findings of the
 family court arguing: (1) the court erred in holding repayment of marital debt
 did not include interest; (2) the court erred in finding 1.1 acres of
 nonmarital property had been transmuted into marital property; and (3) the
 court abused its discretion in denying Wife alimony.  We affirm.
FACTS
Wife and Thomas A. Cline (Husband) began
 dating when Wife was in the eighth grade.  After graduating high school, Wife
 and Husband married on April 24, 1993.  Wife and Husband have two children who
 were respectively nine years old and four years old at the time of the final hearing. 
In anticipation of marriage, Wife and Husband purchased a mobile
 home which they placed on land given to Wife by her grandfather.   Husband
 assisted the grandfather in selecting, clearing, and preparing the land in
 order to place the mobile home.  The couple named the road used to access the
 land T&M Cline Drive, otherwise known as Tommy and Melissa Cline Drive. 
 Additionally, the land was used as collateral to secure the loan for the mobile
 home.  During the course of their marriage, Wife and Husband fully paid for the
 mobile home and continued to make improvements to the land.  
Due to
 poor financial history, Husband and Wife were unable to obtain loans from a
 bank. As a result, they borrowed money from Linda Bradley, Wifes mother,
 throughout the marriage.  Although no signed documents indicate any loans or a
 promise to repay the debt, neither Husband nor Wife dispute receiving loans
 from Bradley.[1] 
 Instead, the parties dispute the amount owed.  According to Wife, each time a
 loan was received from Bradley, Bradley would establish a payment schedule with
 interest.  However, Husband was unaware of any payment schedule or the accrual
 of interest because Wife, using marital funds, handled the payments.  
Prior
 to having children, Wife worked full-time making ten dollars an hour.  Following
 the birth of their first child, Wife continued to work on a part-time basis.  After
 the birth of their second child, Wife left work to care for her children.  At
 some point during the marriage, Wife attended technical college for one and
 one-half years, but at the final hearing she claimed going back to school was
 not an option.  According to Husband, Wife refused to work outside of the
 home.  At the time of the hearing, in addition to watching her own children,
 Wife provided day care services for four additional children at the rate of
 $20.00 to $25.00 per day.  Husband, who at the time of the hearing was on
 short-term disability, has been employed by BMW since 1999 and makes a base pay
 of $25.15 per hour.  
During the course of their marriage, Husband and Wife separated on
 three occasions as a result of Husbands extramarital affair with another
 woman.  The final separation occurred on February 2, 2005.  On May 24, 2005,
 Wife filed for divorce on the grounds of adultery and on September 19, 2006,
 the family court issued its final order and decree of divorce awarding full
 custody of the children to Wife.  For the purpose of determining child support,
 the family court imputed the sum of $8.00 per hour to Wife, which equates to a
 gross monthly income of $1,386.00.  Husbands gross monthly income was
 calculated at $3,266.00, which was reflective of his disability pay.  Husband
 was ordered to pay child support of $1,121.00 per month.  Wife was awarded full
 ownership and possession of the marital home but did not receive an alimony
 award.  The family court found the land on which the marital home sits had been
 transmuted into marital property.  This appeal followed. 
STANDARD OF REVIEW
In
 appeals from the family court, the appellate court has the authority to find
 the facts in accordance with its own view of the preponderance of the evidence.  Ex parte Morris, 367 S.C. 56, 61, 624 S.E.2d 649, 652 (2006).
 However, this broad scope of review does not require the appellate court to
 disregard the findings of the family court.  Wooten v. Wooten, 364 S.C.
 532, 540, 615 S.E.2d 98, 102 (2005).  Neither is the appellate court
 required to ignore the fact that the family court judge, who saw and heard the
 witnesses, was in a better position to evaluate their credibility and to assign
 comparative weight to their testimony.  Latimer v. Farmer, 360 S.C. 375,
 380, 602 S.E.2d 32, 34 (2004).  Questions concerning alimony rest with
 the sound discretion of the [family] court, whose conclusions will not be
 disturbed absent a showing of abuse of discretion.  Kelley v. Kelley,
 324 S.C. 481, 485, 477 S.E.2d 727, 729 (Ct. App. 1996).  The family court abuses its discretion when factual
 findings are without evidentiary support or a ruling is based upon an error of
 law.  Smith v. Doe, 366 S.C. 469, 474, 623 S.E.2d 370, 372 (2005).  
LAW/ANALYSIS

I.  Marital Debt
Wife argues the
 family court erred in its calculation of marital debt because Husband and Wife
 were expected to repay the principal owed to Bradley with interest.  We
 disagree.
Debts
 incurred for marital purposes are subject to equitable distribution.  S.C. Code
 Ann. § 20-7-472(13) (Supp. 2006).  Section 20-7-472 creates a rebuttable
 presumption that a debt of either spouse incurred prior to marital litigation
 is a marital debt and must be factored into the totality of equitable
 apportionment.  Jenkins v. Jenkins, 345 S.C. 88, 103, 545 S.E.2d 531,
 539 (Ct. App. 2001).  Additionally,
 loans from close family members must be carefully scrutinized for legitimacy.  Id. at 104, 545 S.E.2d at 539.  
Our
 review of the record suggests that Bradley gave Husband and Wife approximately
 $41,000 with the expectation that she would be repaid.  Husband, Wife, and
 Bradley testified that Bradley made loans to the parties throughout the
 marriage.  Husband and Wife presented testimony that between $20,000 and $31,000
 had been paid back to Bradley.  Both Bradley and Wife stated the loans were
 interest bearing.  However, neither Wife nor Bradley introduced into evidence a
 promissory note or any other document as proof the payment was an interest
 bearing loan.  Instead, the record reveals the only document indicating a
 payment schedule, including a 7.5% interest rate, was created right before the
 scheduled trial.  Accordingly, the family court did not abuse its discretion in
 excluding interest when calculating the remaining balance of the marital debt
 only for the purposes of equitable distribution.[2]
II.  Transmutation
 
Wife asserts the
 family court erred in finding the 1.1 acres of land, a premarital gift, was
 transmuted into marital property.  We disagree.
Property
 acquired by either party before the marriage is nonmarital property. S.C. Code
 Ann. § 20-7-473(2) (Supp. 2006).
  While not ordinarily subject to division, a gift of real estate to one spouse
 may lose its nonmarital character if used in support of the marriage or
 otherwise utilized in such a manner as to evidence intent by the parties to
 make it marital property. Trimnal v. Trimnal, 287 S.C. 495, 497-98, 339
 S.E.2d 869, 870 (1986).  Property that is nonmarital at the time of its
 acquisition may be transmuted if it: (1) becomes so commingled with marital
 property as to be untraceable; (2) is titled jointly; or (3) is utilized by the
 parties in support of the marriage or in some other manner so as to evidence an
 intent by the parties to make it marital property.  Id. 
As a general rule,
 transmutation is a matter of intent to be gleaned from the facts of each case.  Johnson
 v. Johnson, 296 S.C. 289, 295, 372 S.E.2d 107, 110 (Ct. App. 1988).  The
 spouse claiming transmutation must produce objective evidence showing that, during the marriage, the parties themselves regarded the property as the common property of the marriage.  Id. at 295, 372 S.E.2d at 110-11.  If
 one spouse carries this burden, that spouse establishes a prima facie case the
 property is marital property.  Id. at 295, 372 S.E.2d at 110.  If the
 opposing spouse then wishes to claim that the property so identified is not
 part of the marital estate, the opposing spouse has the burden of presenting
 evidence to establish its nonmarital character.  Id. 
Evidence
 that nonmarital property has been transmuted may include placing the property
 in joint names, transferring the property to the other spouse as a gift, using
 the property exclusively for marital purposes, commingling the property with
 marital property, using marital funds to build equity in the property, or
 exchanging the property for marital property.  Id. at 295, 372 S.E.2d at 111.  However, the
 mere use of separate property to support the marriage,
 without some additional evidence of intent to treat it as property of the
 marriage, is not sufficient to establish transmutation.  Id. at 295-96, 372 S.E.2d at 111.  
South Carolina
 courts have found sufficient evidence to establish transmutation where separate
 property is used to support the marital home.  Recently our court held land
 acquired by husband by gift lost its nonmarital character when husband and wife
 erected the marital home on the land.  Simpson v. Simpson, Op. No. 4341
 (S.C. Ct. App. filed Feb. 8, 2008) (Shearouse Adv. Sh. No. 7 at 71) (citing Cooper
 v. Cooper, 289 S.C. 377, 380, 346 S.E.2d 326, 328 (Ct. App. 1986)).  In Simpson,
 husband acquired land by gift during the marriage.  Thereafter, husband and
 wife cleared the land and used marital funds to build a home, which the parties
 then occupied from the time it was built in 1995 until the commencement of
 their divorce proceeding in 2004.  Id.  Based on these occurrences, this
 court found the parties used the home and land in support of the marriage and
 upheld the family courts ruling that the home was transmuted into marital
 property.  Id.  Similarly, in Cooper, this court held husbands
 nonmarital property was effectively transmuted into marital property when the
 marital home was erected thereon.  Cooper, 289 S.C. at 380, 346 S.E.2d
 at 328.  In finding Husbands nonmarital property transmuted into marital
 property, the Cooper court reasoned: 

 [a]lthough
 the evidence shows that the husband acquired the land by gift from his father
 during the marriage, it also shows, and we so find, that the property lost its
 nonmarital character and therefore became subject to equitable distribution
 when the husband, nine years before the parties separated, erected the marital
 home thereon and thereby used the 1.4 acre tract in support of the marriage. 
 

Id.   Here, as in Simpson and Cooper, the land given to Wife by gift effectively lost its
 nonmarital character when it was used to support the marriage.  Applying this
 courts analysis in Simpson and Cooper, the use of Wifes nonmarital
 land as the foundation to sustain the marital mobile home for the duration of
 Husband and Wifes marriage supports the family courts finding of transmutation.  
Moreover,
 the facts further evidence the intent of the parties to treat the property as
 marital property. Husband assisted in selecting, clearing, and preparing the
 land for the mobile home and the land was used as collateral to secure the loan
 to enable the purchase of the marital mobile home.  Husband and Wife, using
 marital funds, improved the property by installation of a sewer and septic
 tank, addition of electricity and water, and pavement of the driveway.[3] 
 The couple even named the road
 used to access the land under the couples married name, calling it T&M Cline Drive.  These actions, in combination,
 evidence intent by the parties to make the land marital property.  As a result,
 the family court did not abuse its discretion in finding the land was
 transmuted into marital property.

 III.  Alimony
Wife contends the
 family court abused its discretion in denying her request for alimony. 
 Specifically, Wife asserts the family courts denial of alimony was erroneously
 based on the premise that child support is a substitute for alimony and the
 courts decision was incorrect due to error as to the other grounds of this
 appeal.  We disagree. 
An
 award of alimony rests within the sound discretion of the trial court and will
 not be disturbed on appeal absent an abuse of discretion.  Allen v. Allen,
 347 S.C. 177, 184-85, 554 S.E.2d 421,
 424-25 (Ct. App. 2001).  An abuse of discretion occurs when the findings
 of the family court either lack evidentiary support or are controlled by an
 error of law.  Bryson v. Bryson, 347 S.C. 221, 224, 553 S.E.2d 493, 495
 (Ct. App. 2001).
Alimony
 is a substitute for the support which is normally incident to the marital
 relationship. Johnson v. Johnson, 296 S.C. 289, 300, 372 S.E.2d 107, 113
 (Ct. App. 1988).  As such, alimony serves as a means of placing the supported
 spouse in a position as near as possible to the position he or she enjoyed
 during the marriage.  Id.  However, [a]limony should not dissuade a
 spouse, to the extent possible, from becoming self-supporting.  Davis v.
 Davis, 372 S.C. 64, 79, 641 S.E.2d 446, 453-54 (Ct. App. 2006)
 (quoting Rimer v. Rimer, 361 S.C. 521, 525, 605 S.E.2d 572, 574 (Ct.
 App. 2004)).  The ultimate alimony award, while based upon the reasonable needs
 of the wife, should not serve as a disincentive for her to make reasonable
 efforts to improve her employment potential or dissuade her, to the extent
 feasible, from becoming self-supporting.  Josey v. Josey, 291 S.C. 26,
 33, 351 S.E.2d 891, 896 (Ct. App. 1986).  It is the duty of the family
 court to make an alimony award that is fit, equitable, and just if the claim is
 well founded.  Allen, 347 S.C. at 184, 554 S.E.2d at 424 (citing Woodward
 v. Woodward, 294 S.C. 210, 217, 363 S.E.2d 413, 417 (Ct. App. 1987)).
South
 Carolina law provides the family court
 may grant alimony in such amounts and for such term as the judge considers
 appropriate under the circumstances.  Smith v. Smith, 327 S.C. 448, 462,
 486 S.E.2d 516, 523 (Ct. App. 1997).  Factors to be considered in making an
 alimony award include: (1) duration of the marriage; (2) physical and emotional health of the
 parties; (3) educational background of the parties; (4) employment history and
 earning potential of the parties; (5) standard of living established during the
 marriage; (6) current and reasonably anticipated earnings of the parties; (7)
 current and reasonably anticipated expenses of the parties; (8) marital and
 nonmarital properties of the parties; (9) custody of children; (10) marital
 misconduct or fault; (11) tax consequences; and (12) prior support obligations;
 as well as (13) other factors the court considers relevant. S.C. Code Ann. §
 20-3-130(C) (Supp. 2007).  Additionally, the amount received as a result of
 equitable distribution is also a factor to be considered in awarding alimony.  Josey,
 291 S.C. at 33, 351 S.E.2d at 895-96.  The weight accorded to each factor is
 within the family courts sound discretion.  S.C. Code Ann. § 20-3-130(C)
 (Supp. 2007).  The family court has discretion to determine the amount of any
 alimony award.  S.C. Code Ann. § 20-3-230(B)(1) (Supp. 2007).  
Where
 alimony is appropriate, South Carolina favors permanent periodic alimony over
 other statutory forms of alimony.  Jenkins v. Jenkins, 345 S.C. 88, 95,
 545 S.E.2d 531, 535 (Ct. App. 2001).  Despite this preference, however, South Carolina recognizes rehabilitative alimony as an alternative in special
 circumstances.  Rehabilitative alimony may be awarded only upon a showing of
 special circumstances justifying a departure from the normal preference for
 permanent periodic support.  Jenkins, 345 S.C. at 95, 545 S.E.2d at
 535.  The purpose of rehabilitative alimony is to further the ability of a
 dependant spouse to become self-supporting following a divorce.  Id.
In
 the present case, the family court considered all of the pertinent statutory factors
 including the duration of the marriage and Husbands conduct in determining
 whether to make an award of alimony.  Upon weighing the necessary factors as
 well as the equitable distribution award, the family court found that permanent
 periodic alimony was not appropriate in this case.  
Additionally,
 the court did not specifically find the need for rehabilitative alimony. 
 Instead, the court evaluated whether rehabilitative alimony, in a best case
 scenario, would be beneficial to Wife.  After reviewing the numbers and upon
 consideration of the tax consequences, the family court concluded that Wife was
 better off financially without an award of alimony.  While we would not condone
 the substitution of child support for alimony, we do not reach this question as
 we do not interpret the courts best case scenario as being tantamount to a
 finding to award rehabilitative alimony.  Accordingly, the courts alternative
 reasoning is merely dicta and is not dispositive of this appeal.  We interpret
 the courts decision as denying any form of alimony after consideration of the
 various factors and record, especially in light of Wifes age, education,
 employment history, and ability to work.  In her brief on appeal, Wife only
 claims that she is entitled to permanent periodic alimony.  Since Wife bases
 her alimony argument on the alleged errors of the court on the other grounds of
 appeal, as well as the courts alleged error in that portion we find to be dicta,
 we find no abuse of discretion by the family court.  We further note that the
 court was never presented with any request, by virtue of the pleadings, or at
 trial, to award rehabilitative alimony. Thus, we find no abuse of discretion in
 the family courts decision to deny Wife alimony.   
CONCLUSION
Based
 on the foregoing, the decision of the family court is 
AFFIRMED.
HEARN,
 C.J., PIEPER, J., and GOOLSBY, A.J., concur.

[1] According to Bradley, Husband and Wife borrowed approximately
 $41,000 and have paid back over $33,000.  
[2] Bradley is not a party to this litigation.  Our
 ruling on this issue is limited solely to the courts equitable distribution
 analysis.  We express no opinion on Bradleys right to assert a claim against
 Husband or Wife.
[3] Wife asserts all of these acts, except pavement of
 the driveway, occurred before marriage and suggests the property is thus
 nonmarital.  However, the court is not limited solely to acts occurring during
 marriage in its determination of the intent of the parties.